L. SUZIO CONCRETE COMPANY, INC. *v.*
BIRMINGHAM CONSTRUCTION
SERVICES COMPANY, INC.,
ET AL.
(AC 23005)

Lavery, C. J., and West and DiPentima, Js.

Argued June 10—officially released September 2, 2003

*Richard P. Savitt,* for the appellant (defendant David Cassetti).

*Kevin P. Thornton,* for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. This case involves an action brought by the plaintiff, L. Suzio Concrete Company, Inc., to recover a balance due for concrete building materials furnished to the defendant Birmingham Construction Services Company, Inc. (Birmingham), pursuant to a credit agreement, which the defendant David Cassetti signed as a guarantor.[1] The defendant appeals from the judgment of the trial court rendered in favor of the plaintiff. On appeal, the defendant claims[2] that the court improperly (1) determined that he was liable as a guarantor because the subject guarantee was no longer effective, (2) failed to find that the plaintiff did not mitigate its damages with respect to the defendant, which the plaintiff allegedly was obligated to do by law, (3) determined that the credit agreement did not limit the defendant's liability to $5000 and (4) failed to find that there was no binding contract between the parties because there was no "meeting of the minds." We affirm the judgment of the trial court.

[1] Birmingham is not involved in this appeal. We therefore refer in this opinion to Cassetti as the defendant.

[2] The defendant did not include a statement of issues in his appellate brief. We have interpreted his claims, therefore, in a manner consistent with the arguments and analyses presented in his brief.

The following undisputed facts and procedural history are relevant to our resolution of the defendant's appeal. On July 29, 1991, Birmingham entered into a credit agreement with the plaintiff for concrete building materials. The defendant, who was a principal in Birmingham at that time, signed the agreement as a guarantor. On October 24, 1995, the defendant conveyed all his stock in Birmingham to Michael Kane, Birmingham's other principal, and left the corporation. After he left Birmingham, the defendant did not revoke the guarantee, nor did he advise the plaintiff that he had left the corporation.

By way of a five count amended complaint dated March 28, 2001, the plaintiff brought the present action, seeking to recover a balance due on an open account for materials it furnished to Birmingham between May and November, 1998, pursuant to the credit agreement. The first two counts of the amended complaint were directed against Birmingham, and the remaining three counts were directed against the defendant. The defendant filed an answer, special defenses and a counterclaim. The court dismissed the two counts of the amended complaint directed against Birmingham, two of the counts directed against the defendant and the defendant's counterclaim, leaving only the third count of the amended complaint for disposition.[3] As to the third count, which alleged the defendant's liability as guarantor, the court rendered judgment in favor of the plaintiff.[4] This appeal followed.

---

[3] The court dismissed the first two counts, which were directed against Birmingham, because the plaintiff failed to prosecute those claims. The court dismissed the fourth and fifth counts, which were directed against the defendant, because they were duplications of the third count, and it dismissed the defendant's counterclaim because no evidence was offered in support thereof.

[4] The court rendered judgment for the plaintiff in the amount of $9562.56 plus interest of $3944.52. As the credit agreement provided for the recovery of reasonable attorney's fees, the court also awarded the plaintiff $8467 in fees and stated that the defendant would be given an opportunity to contest that award. Following postjudgment proceedings on that and other issues, the court increased the award of attorney's fees to $9747.57.

I

The defendant first claims that the court improperly determined that he was liable as a guarantor because, he asserts, the continuing guarantee was no longer effective. Specifically, he argues that it was unreasonable to impose liability on him pursuant to the guarantee after he left Birmingham in October, 1995. We disagree.

"An offer for a continuing guarant[ee] is ordinarily effective until revoked by the guarantor or extinguished by some rule of law. . . . To revoke a continuing guarant[ee], the guarantor usually must give notice of the revocation to the creditor. . . . However, [e]ven a continuing guarant[ee] that is, in terms, unlimited as to duration, imposes liability upon a guarantor only for such period of time as is reasonable in light of all the circumstances of the particular case. . . . The interpretation of a continuing guarant[ee], as well as the question of its revocation, ordinarily is a question of fact." (Citations omitted; internal quotation marks omitted.) *Associated Catalog Merchandisers, Inc.* v. *Chagnon*, 210 Conn. 734, 742–43, 557 A.2d 525 (1989). "Our review of the factual findings of the trial court is limited to a determination of whether they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 328, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002).

We note that the amount of the plaintiff's judgment cited in the judgment file in the record is apparently incorrect as it does not reflect the change in the amount of the award of attorney's fees. That change would have increased the plaintiff's recovery to $23,254.65 plus taxable costs.

In the present case, the guarantee states in relevant part that the defendant "individually agrees this is a continuing guarantee and *shall remain in full force and effect until revoked by written notice to seller*, but said revocation shall be effective only as to transactions entered into after sellers receipt of such notice." (Emphasis added.) The guarantee further states that the defendant acknowledged that he read and understood the agreement.

In its memorandum of decision, the court stated: "The defendant argues that the court should look to the intention of the parties for the duration of the guarantee. The guarantee in question has no termination date, but gives the guarantor, the defendant, the right of revocation. He chose not to exercise that right, even though he sold his shares in 1995, four years after executing the guarant[ee], and a schedule attached to his stock sale agreement listed the plaintiff as a creditor of the company from which [he] was withdrawing. . . . The fact that the plaintiff did not review the guarantee each time it extended credit is of no moment. Such guarantee clauses are usually in repose until they are resorted to in case of a default."

We conclude that in light of all the evidence and circumstances of this case, it was not unreasonable to impose liability on the defendant as the guarantor of the security agreement. The guarantee expressly provided the defendant with the right to revoke the guarantee in writing, but he failed to exercise that right. Also, the defendant did not keep himself informed as to his liability under the guarantee. See *Connecticut National Bank* v. *Foley*, 18 Conn. App. 667, 673–74, 560 A.2d 475 (1989); see also *Hartford-Aetna National Bank* v. *Anderson*, 92 Conn. 643, 648, 103 A. 845 (1918) (guarantor's failure to keep himself informed as to his liability under guarantee constitutes sufficient ground to hold guarantor liable). Moreover, as the court stated, this is

not a case like *Monroe Ready Mix Concrete, Inc.* v. *Westcor Development Corp.*, 183 Conn. 348, 352, 439 A.2d 362 (1981), in which there was a significant period of inactivity between the parties when no credit was extended. See *Connecticut National Bank* v. *Foley*, supra, 674. Here, credit was extended continuously for the seven year period in dispute.

After reviewing the entire record, we conclude that the court's determination that it was reasonable to impose liability on the defendant under the guarantee, despite the fact that he had left Birmingham in October, 1995, is not clearly erroneous.

## II

The defendant next claims that it was improper for the court to fail to find that the plaintiff did not mitigate its damages with respect to the defendant, which the defendant contends the plaintiff was obligated to do by law. The defendant appears to argue that because one of the plaintiff's employees testified that he knew the defendant had left Birmingham,[5] that knowledge should have been imputed to the plaintiff and that to mitigate damages, the plaintiff "should have inquired as to the status of [Birmingham's] account" and notified the defendant that "it was permitting [Birmingham] to run up its debt without payment to [the defendant's] detriment."

We do not agree with the defendant that the plaintiff was obligated to notify the defendant of his exposure pursuant to the guarantee under the circumstances in this case. The defendant would have us, in essence, shift to the plaintiff the defendant's burden of keeping himself informed as to his liability under the continuing

[5] We note that the court specifically found that although "[t]he [plaintiff's] employee testified that he spoke to . . . Kane, who told him [that] he and his partner were splitting up . . . he didn't know [the defendant] was the partner."

guarantee. See id., 673–74. The defendant cites no authority, and we have found none, for such a proposition. Indeed, as the court stated, under the circumstances, "[t]his theory borders on the frivolous." Accordingly, we reject the defendant's claim.

### III

The defendant next claims that the court improperly determined that the credit agreement did not limit his liability to $5000. Specifically, he argues that the language in the agreement, "Monthly credit limit required: $5000," is ambiguous and that the court should have resolved the ambiguity in his favor by determining that the language limited his liability under the credit agreement to $5000. We disagree.

The governing law applicable in this case is well established. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the con-

tract rather than from one party's subjective perception of the terms." (Citation omitted; internal quotation marks omitted.) *Niehaus* v. *Cowles Business Media, Inc.*, 263 Conn. 178, 188–89, 819 A.2d 765 (2003).

In applying that law to the facts of the present case, we, like the trial court, conclude that the language, "Monthly credit limit required: $5000," is clear and unambiguous. In its memorandum of decision, the court stated in relevant part: "The figure of $5000 was inserted by [the defendant], who now claims he understood this to be the limit of his liability. . . . [T]here is no ambiguity to resolve. The language clearly sets forth what the credit applicant anticipates his needs will be . . . in effect [the applicant] is saying, 'I anticipate needing $5000 *a month in credit.*' " (Emphasis added.) We agree with the court that the language, which is in the informational portion of the credit agreement, clearly represented an estimate of what Birmingham anticipated it needed in terms of monthly credit and not a limit of Birmingham's liability.[6] The defendant's subjective perception of the subject language does not create ambiguity. See id., 189. Accordingly, we conclude that the court properly determined that the credit agreement did not limit the defendant's liability to $5000.

IV

Finally, the defendant claims that the court improperly failed to find that there was no binding contract between the plaintiff and Birmingham because there was no "meeting of the minds." He contends that because there was no "meeting of the minds" giving rise to a binding credit agreement, he should not have been found liable as a guarantor of that agreement.

---

[6] We note that Leonardo H. Suzio, a principal in the plaintiff corporation, testified at trial that the purpose of the "monthly credit limit required" information on the credit application was "to get an estimate from the customer of how much they think they're going to charge on a monthly basis."

The defendant did not distinctly raise his claim before the trial court.[7] This court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Practice Book § 60-5; see also *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 33, 727 A.2d 204 (1999) (claims not addressed or decided by trial court not properly before reviewing court). Accordingly, we decline to address the claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] In his appellate brief, the defendant appears to concede that his claim was not distinctly raised before the trial court.