## HUDSON UNITED BANK *v.* ENDEAVOR GROUP ET AL.
## (AC 26413)

Gruendel, Harper and Peters, Js.

Argued March 27—officially released July 11, 2006

*Brian E. Lambeck*, for the appellant (defendant Mark E. Breslin).

*Laura Gold Becker*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. This case involves the interpretation of a contract of guarantee. The plaintiff, Hudson United Bank, brought this action against the Endeavor Group (Endeavor) and one of its partners, the defendant Mark E. Breslin,[1] to recover the amount due under a 1998 promissory note. The plaintiff alleged that the defendant was liable pursuant to a 1995 loan guarantee that he had executed on behalf of Endeavor. In accordance with a report by an attorney trial referee (referee), the

---

[1] The plaintiff also sought damages from Breslin's business partner, Leonard R. Merullo, who also signed a guarantee agreement for the 1995 loan. Subsequent to the commencement of the action, Merullo filed for bankruptcy and the debt claimed against him was discharged. The plaintiff subsequently withdrew the action as against Merullo. Because only Breslin has appealed, we refer to him in this opinion as the defendant.

court found in favor of the plaintiff and rendered judgment holding the defendant liable. On appeal, the defendant claims that the court improperly accepted the conclusion of the referee that the 1995 loan guarantee was continuous and, therefore, extended his liability to the 1998 loan on which Endeavor defaulted. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. In February, 1995, Endeavor obtained a loan in the amount of $100,000 from Westport Bank and Trust Company (Westport).[2] As part of this loan transaction, the defendant executed a loan guarantee agreement in favor of Westport. The agreement provided that the defendant would guarantee payment of all claims of liability of Endeavor to Westport "whether now existing or hereafter incurred . . . ."

In late 1996, before the 1995 loan was paid off, Westport was merged into Lafayette American Bank & Trust Company (Lafayette), a wholly owned subsidiary of HUBCO, Inc. Pursuant to General Statutes § 36a-125[3] and the express terms of the merger agreement, all of the assets and liabilities of Westport, including the 1995 loan documents, passed to Lafayette as the resulting bank.

In August, 1998, Endeavor obtained another loan, pursuant to a commercial promissory note, in the amount of $150,000 from Lafayette. Approximately $100,000 of this amount was used to pay off the 1995

---

[2] The loan is evidenced by a commercial revolving line of credit loan agreement and a commercial revolving line of credit promissory note.

[3] General Statutes § 36a-125 (g) provides in relevant part: "Upon the completion of a merger or consolidation . . . (4) the entire assets, business, good will and franchises of each of the constituent banks shall be vested in the resulting bank without any deed or transfer, provided the constituent banks may execute such deeds or instruments of conveyance as may be convenient to confirm the same . . . ."

loan. In 1999, Lafayette and other banking subsidiaries of HUBCO, Inc., were consolidated into the plaintiff. Endeavor ceased business operations in 2000 and defaulted on its 1998 loan obligation on June 18, 2001.

On October 24, 2001, the plaintiff brought the present action seeking to collect from Endeavor and the defendant all amounts owed under the 1998 promissory note. The plaintiff claimed that the defendant was liable because the 1995 loan guarantee that he had executed was continuous and, thus, covered the 1998 loan as well. The defendant filed an answer and special defenses, claiming that the 1995 loan guarantee did not run to loans subsequently made by "different and distinct entities."

The court referred the matter to Raymond B. Rubens, an attorney trial referee, who, after conducting a hearing, filed a report on March 10, 2003. In his report, the referee found that, despite the mergers of the banks, the 1995 loan guarantee signed by the defendant was a continuing one that covered the 1998 promissory note. The referee recommended that judgment be rendered in favor of the plaintiff to recover the sum of $169,068.76 plus interest in the amount of $28.10 per day together with reasonable attorney's fee and costs.

The defendant filed an objection to the acceptance of the referee's report, asserting that, under the 1995 loan guarantee, he was liable only to Westport and not to any successors or assigns of the bank. After hearing argument on the defendant's objection on September 8, 2003, the court entered an order requesting an articulation and clarification as to the findings of the referee's report. The referee filed the articulation on January 22, 2004, finding that, on the basis of the unambiguous language of the guarantee, the defendant was liable to the successors and assigns of Westport for the amount due on the 1998 note. The parties again appeared before

the court for a hearing on the referee's articulated report. On January 31, 2005, the court rendered judgment in favor of the plaintiff in accordance with the report, thereby overruling the defendant's objection. This appeal followed.

The defendant claims that the court improperly accepted the referee's finding that the defendant was liable to the plaintiff for the 1998 note as a guarantor. Specifically the defendant argues that the referee improperly found that the 1995 loan guarantee was a continuing one covering both the 1995 loan from Westport and the 1998 loan from Lafayette. We are not persuaded.

We first examine the referee's finding that the 1995 loan guarantee was a continuing one that covered the 1998 loan from Lafayette. "An offer for a continuing guarantee is ordinarily effective until revoked by the guarantor or extinguished by some rule of law. . . . To revoke a continuing guarantee, the guarantor usually must give notice of the revocation to the creditor. . . . However, [e]ven a continuing guarant[ee] that is, in terms, unlimited as to duration, imposes liability upon a guarantor only for such period of time as is reasonable in light of all the circumstances of the particular case. . . . The interpretation of a continuing guarant[ee], as well as the question of its revocation, ordinarily is a question of fact." (Internal quotation marks omitted.) *L. Suzio Concrete Co.* v. *Birmingham Construction Services Co.*, 79 Conn. App. 211, 214, 829 A.2d 868 (2003). Like any other finding of fact, the referee's finding that the defendant's guarantee was a continuing one receives only limited review on appeal. We review to determine only whether the decision was clearly erroneous in light of the evidence and the pleadings in the whole record. See *Connecticut National Bank* v. *Foley*, 18 Conn. App. 667, 670, 560 A.2d 475 (1989).

In interpreting the intention of the parties to the guarantee, the referee was entitled to rely on, inter alia, the language of the guarantee. Id. Examination of the language of the 1995 loan guarantee discloses an agreement that expressly provides for loans made then and in the future. The guarantee states in relevant part that the defendant "absolutely and unconditionally guarantees to [Westport] the prompt payment of claims of every nature and description and any and every obligation and liability of [Endeavor] to [Westport] of whatsoever nature and howsoever evidenced, *whether now existing or hereafter incurred*, originally contracted with [Westport] or with another or others and now or hereafter owing to or acquired in any manner, in whole or in part, by [Westport], or in which [Westport] may acquire a participation . . . ." (Emphasis added.)

In his report, the referee found that the 1995 loan guarantee executed by the defendant to Westport was continuous and therefore covered the 1998 note now held by the plaintiff. Specifically, the referee found that "in 1996, well prior to the 1995 loan [from Westport] having been paid off, [Westport] was merged into [Lafayette] . . . . According to . . . the express terms of the agreement and plan of merger . . . all of the assets and liabilities of [Westport], including the 1995 loan documents, passed to [Lafayette], as the surviving bank."[4] The referee further determined that in 1999

---

[4] The merger document provides in relevant part: "At and after the Effective Time, the Bank Merger shall have all the effects set forth in Section 36a-125 of the Banking Law of Connecticut and, in connection therewith, all assets of Lafayette and Westport as they exist at the Effective Time shall pass to and vest in the Surviving Bank without any conveyance or other transfer."

The document further provides: "At the Effective Time, by virtue of the Bank Merger and without further act or deed:

"(a) all of the rights, privileges, immunities and franchises of Westport shall vest in and be possessed by Lafayette, as fully as the same were previously held and possessed by Westport, without change or diminution . . . and

"(c) all of Westport's liabilities and obligations shall be assumed by Lafayette."

"[Lafayette was] consolidated into . . . Hudson . . . which is the current holder of the note and guarantee."

The defendant claims that the referee misconstrued the 1995 loan guarantee to Westport as continuous and as covering the 1998 note held by the plaintiff. Specifically, he claims that the language of the 1995 loan guarantee clearly limited his liability to the initial 1995 loan from Westport in the amount of $100,000, which Endeavor paid off. Examining the language of the guarantee and the findings of the referee, we find nothing to indicate that the guarantee was limited to a single note transaction in favor of Westport.

The 1995 loan guarantee expressly provides that "[t]his guarant[ee] shall inure to the benefit of [Westport], its successors, legal representatives and assigns." "A contract is to be construed as a whole and all relevant provisions will be considered together." (Internal quotation marks omitted.) *Bijur* v. *Bijur*, 79 Conn. App. 752, 758, 831 A.2d 824 (2003). When read in its entirety, the guarantee clearly provides that its benefit would continue to any and all successors of Westport, including Lafayette and the plaintiff.

The guarantee also expressly provided the defendant with the right to revoke the guarantee in writing. According to the terms of the guarantee, "As to each guarantor, this guarant[ee] shall continue until written notice of revocation signed by such guarantor shall in each case have been actually received by the Bank . . . ." The defendant, however, failed to exercise his right of revocation.[5] The court therefore properly concluded that the defendant is liable under the express terms of the agreement he signed.

---

[5] During cross-examination, the defendant testified as follows:

"[The Plaintiff's Counsel]: Okay. You never revoked the Westport . . . guarantee, did you . . . ?

[The Defendant]: Not that I recall. I wouldn't have known that that would be possible."

Furthermore, in his articulation, the referee held that the 1995 loan guarantee was not ambiguous as to whether, by its terms, it guaranteed loans to successors and assigns of Westport. The referee stated that the 1995 loan guarantee "clearly guarantees the loan for the [b]ank that is the holder of the note at the time of the default." Indeed, at the time of default, June 18, 2001, the plaintiff, subsequent to the 1999 consolidation of Lafayette, was the holder of the 1998 note on which Endeavor failed to make payment. As found by the referee, the defendant guaranteed the 1998 note pursuant to the 1995 loan guarantee and subsequent merger of Westport and Lafayette. The referee's determination, adopted by the court, that the benefit of the guarantee was intended to extend to successors such as Lafayette and the plaintiff, therefore, was not clearly erroneous.[6]

The defendant also claims that the court improperly determined that Lafayette relied on the 1995 loan guarantee in making its 1998 loan to Endeavor. The element of reliance, argues the defendant, was not specifically litigated at trial and addressed by the referee and, therefore, cannot be found by the court in reaching its decision. While we agree with the defendant that a reviewing court cannot substitute its findings for those of the referee,[7] we conclude that a specific finding of reliance

---

[6] In its memorandum of decision, the court stated: "The attorney trial referee found that despite the fact of the mergers of the banks, [the defendant's] obligation under the guarantee had not been terminated by that series of events, notwithstanding the fact that they took place after he entered into the guarantee. This court has no basis to reject the findings by the attorney trial referee, as articulated and clarified." We agree with the court that the referee properly found that the 1995 loan guarantee extended to the 1998 note.

[7] "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees." (Internal quotation marks omitted.) *TDS Painting & Restoration, Inc.* v. *Copper Beech Farm, Inc.*, 73 Conn. App. 492, 520–21, 808 A.2d 726, cert. denied, 262 Conn. 925, 814 A.2d 379 (2002).

was not made by the court in its memorandum of decision.

In its decision, the court quoted *Connecticut Bank & Trust* v. *Wilcox*, 201 Conn. 570, 575, 518 A.2d 928 (1986), for the proposition that "[a] continuing guarant[ee] is enforceable, for those transactions within its contemplation, *if the creditor makes subsequent advances by reason of the outstanding guarant[ee]*." (Emphasis added.) The 1995 loan guarantee executed by the defendant was still outstanding when Endeavor received the 1998 loan. As discussed, the 1998 loan was used by Endeavor to pay off its 1995 loan.[8] "Both our case law and the modern law of contract eschew any requirement of contemporaneity between a continuing guarant[ee] and the obligations secured thereby." Id. The defendant, therefore, was liable for the 1998 loan to Endeavor pursuant to the 1995 loan guarantee.

We conclude that in light of all the evidence and circumstances of this case, it was not improper for the court to impose liability on the defendant as the guarantor of the 1998 note pursuant to the 1995 loan guarantee.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] We also note that in *Connecticut Bank & Trust* v. *Wilcox*, supra, 201 Conn. 571, the defendants executed a letter of guarantee on September 9, 1980, and the corporation did not execute the first of three promissory notes until April, 1981. The Supreme Court held that, despite this delay between the execution of the letter of guarantee and the execution of the line of credit, the guarantee was valid and binding. Id., 575–76. In this case, the 1995 loan guarantee was executed by the defendant as part of the 1995 loan transaction; therefore, there was no delay between the initial loan agreement and loan guarantee.