## D'AMATO INVESTMENTS, LLC *v.* DAVID SUTTON
## (AC 29516)

Gruendel, Harper and Beach, Js.

---

Argued May 19—officially released September 29, 2009

*Eric H. Opin,* with whom was *James W. Walsh,* for the appellant (plaintiff).

*Jonathan J. Klein,* for the appellee (defendant).

BEACH, J. This case involves the interpretation of a commercial lease and a personal guarantee of that lease. The plaintiff, D'Amato Investments, LLC, brought this action against the defendant, David Sutton,[1] to recover the amount allegedly due under a commercial lease between the plaintiff and Chimaera, Inc. (Chimaera), pursuant to a guarantee signed by the defendant. The plaintiff claims that the trial court improperly failed to find that the defendant is liable for (1) the unpaid amounts owed by Chimaera for the period subsequent to the expiration of the lease and (2) select unpaid amounts owed by Chimaera for the period prior to the expiration of the lease. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the plaintiff's appeal. Chimaera entered into a commercial lease with Louis J. D'Amato and John C. D'Amato for a property in Milford. The lease originally was to expire on February 28, 2002. It subsequently was extended through February 28, 2005, pursuant to a written extension. The defendant, who was the president of Chimaera at the time the lease was entered into, also signed a guarantee in which he personally guaranteed Chimaera's obligations under the lease.

On June 11, 1998, the D'Amatos assigned their interests in the lease to the plaintiff. In January, 2004, the defendant's employment with Chimaera was terminated. In early 2004, Chimaera began to pay rent sporadically. Payment lapses continued after the expiration of the lease term on February 28, 2005, at which time Chimaera remained in the space it rented from the

---

[1] Chimaera, Inc., was later added as a defendant by way of an amended complaint filed by the plaintiff. Sutton subsequently impleaded Chimaera, Inc., as a third party defendant. For the purpose of this appeal, however, we refer to Sutton as the defendant.

plaintiff pursuant to a holdover clause in the lease. The plaintiff instituted an eviction action against Chimaera; Chimaera vacated the space and returned possession to the plaintiff in September, 2005. For much of 2004 and 2005, Chimaera accrued significant amounts owed to the plaintiff for unpaid rent, fees for late payment of rent and holdover charges.

The plaintiff brought the present action against the defendant to enforce the guarantee and to recover the amounts owed to the plaintiff by Chimaera. Following a hearing, the court filed a "notice of judgment," which included a brief explanation of its decision. It found in favor of the defendant on the ground that the guarantee expired on February 28, 2005, the date the extended lease term expired. The court also stated that the plaintiff failed to meet its burden as to liability for unpaid rent and other charges prior to February 28, 2005, and that the plaintiff had presented no information on whether the amounts owed by Chimaera had been discharged in bankruptcy.

The plaintiff filed this appeal, claiming that the court improperly determined that (1) the guarantee expired on February 28, 2005, and (2) the plaintiff failed to meet its burden regarding damages prior to February 28, 2005.

I

We must first address the issue of standing. "The issue of standing implicates the trial court's subject matter jurisdiction and therefore presents a threshold issue for our determination." *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 511, 518, 970 A.2d 583 (2009).

The defendant claims that the plaintiff lacks standing to enforce the guarantee because the plaintiff is not a party to the guarantee. The defendant argues that

although the lease was assigned from Louis J. D'Amato and John C. D'Amato to the plaintiff, the guarantee itself was never assigned to the plaintiff. The defendant correctly points out that the "assignment of lease" did not explicitly incorporate or mention the guarantee signed by the defendant. The language of the assignment, however, does not by itself govern our resolution of the issue. We also turn to the language of the guarantee.

The guarantee[2] states the following in relevant part: "[T]he undersigned guarantees to Landlord, *Landlord's successors and assigns,* the full performance and observance of all covenants, conditions and agreements, therein provided to be performed and observed by Tenant . . . ." (Emphasis added.) Our resolution of the issue of standing depends on whether the plaintiff was a successor or assignee to Louis J. D'Amato and John C. D'Amato under the guarantee.

This court faced a similar issue in *Hudson United Bank* v. *Endeavor Group,* 96 Conn. App. 447, 901 A.2d 64 (2006). In that case, the plaintiff brought suit to enforce a guarantee signed by the defendant, an individual who was a partner of Endeavor Group, another defendant. Id., 448. The original beneficiary of the guarantee was Westport Bank and Trust Company. Id., 449. After the guarantee was executed, the beneficiary ultimately merged with the plaintiff, which assumed all assets and liabilities of the beneficiary.[3] Id., 449. The relevant language of the guarantee provided that "[t]his guarant[ee] shall inure to the benefit of [the beneficiary], its successors, legal representatives and

---

[2] In the text of the guarantee, "Landlord" refers to Louis J. D'Amato and John C. D'Amato, "undersigned" refers to the defendant and "Tenant" refers to Chimaera.

[3] The merger documents apparently did not specifically assign the guarantee; they did assign all of he beneficiary's assets and liabilities. *Hudson United Bank* v. *Endeavor Group,* supra, 96 Conn. App. 449.

assigns." (Internal quotation marks omitted.) Id., 453. We concluded that the guarantee continued to benefit Hudson, the successor of the original beneficiary. Id.

The language in the guarantee in the present case is functionally identical to the previously quoted language. Similarly, the plaintiff was assigned Chimaera's lease from the original beneficiaries of the guarantee. The plaintiff was a successor or assignee of Louis J. D'Amato and John C. D'Amato under the guarantee and, therefore, has standing to enforce the guarantee.

## II

We now address the plaintiff's claims on appeal. The plaintiff first claims that the court improperly concluded that the guarantee expired on February 28, 2005. We disagree.

The guarantee[4] stated in relevant part: "[T]his guarant[ee] shall remain and continue in full force and effect as to any renewal, modification or extension of this Lease and during any period in which Tenant is occupying the premises as a 'statutory tenant.' " The parties do not dispute that the guarantee remained in effect during the extension of the lease ending on February 28, 2005. Rather, our resolution of this claim turns on the issue of whether Chimaera was a "statutory tenant" during the period between the time the lease expired on February 28, 2005, and the time it vacated the premises in September, 2005.

A guarantee is a contract. *Garofalo* v. *Squillante*, 60 Conn. App. 687, 694, 760 A.2d 1271 (2000), cert. denied, 255 Conn. 929, 767 A.2d 101 (2001). The plaintiff's claim requires us to examine the terms of the guarantee. "The question of the parties' intent is [o]rdinarily . . . a question of fact [subject to appellate review under the

---

[1] See footnote 2.

clearly erroneous standard]. . . . If, however, the language of the contract is clear and unambiguous, the court's determination of what the parties intended in using such language is a conclusion of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard. . . . Thus, in the absence of a claim of ambiguity, the interpretation of [a] contract presents a question of law. . . . Well established principles guide our analysis in determining whether the language of a contract is ambiguous. [A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . In contrast, [a] contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Smithfield Associates, LLC* v. *Tolland Bank*, 86 Conn. App. 14, 18–19, 860 A.2d 738 (2004), cert. denied, 273 Conn. 901, 867 A.2d 839 (2005).

Accordingly, to determine our standard of review, we must first ascertain whether the pertinent language of the guarantee is ambiguous. The term "statutory tenant" is not defined in the lease or the guarantee. It appears to have no legal meaning in this state, whose law governs this contract. The pertinent language of the guarantee is ambiguous at best, and, therefore, our review of this claim is governed by the clearly erroneous standard.

The court at first concluded in its notice of judgment that "the personal guarant[ee] expired on February 28, 2005." In its articulation on this issue, the court stated

that "[t]he extension ended February 28, 2005; therefore, the guarant[ee] ended February 28, 2005." The court also noted that the term "statutory tenant" was not defined in the lease. Necessary to and implicit in the court's decision was the finding that the plaintiff had not satisfied its burden to show that Chimaera was a "statutory tenant" between February 28 and September, 2005.

As the court noted, the term "statutory tenant" is not defined in the lease. As we noted previously, it is not defined in the guarantee. We have not found any Connecticut case law interpreting this term, nor has the plaintiff presented any before us. It does not appear in the General Statutes. The court heard testimony from the defendant and representatives of the plaintiff. None of the witnesses testified as to the meaning of the term or the parties' understanding of the term. There was evidence that the terms of the guarantee, including the clause encompassing the "statutory tenant" term, were not negotiated between the parties. Accordingly, the court's conclusions that the plaintiff had not proved by a preponderance of the evidence that Chimaera was a "statutory tenant" after its lease expired and that the guarantee expired on February 28, 2005, were not clearly erroneous.

## III

The plaintiff also claims that the court improperly concluded that the plaintiff failed to meet its burden of proof regarding damages for unpaid rent prior to February 28, 2005. We disagree.

"[T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . [W]hether the decision of the trial court is clearly erroneous . . . involves a two part function: where the legal conclusions of the court are

challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . A factual finding may be rejected by this court only if it is clearly erroneous. . . . A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin,* 247 Conn. 48, 68–69, 717 A.2d 724 (1998).

In support of its claim that the defendant was liable under the guarantee for the unpaid rent owed by Chimaera prior to February 28, 2005, the plaintiff submitted as exhibit five a history of charges and payments received from Chimaera between July, 2004, and August, 2005. The court also heard testimony from the defendant, Louis J. D'Amato and from Jill Krakovich, who was the plaintiff's property manager. Krakovich testified as to the individual figures presented in exhibit five. In the notice of judgment, the court stated that it "has reviewed the evidence and assessed the credibility of the witnesses" and found that "the plaintiff failed to meet its burden of proof as to the liability for unpaid

rent prior to February 28, 2005." The court specifically referenced exhibit five in its articulation when it stated the following: "[Exhibit five] indicates [that] there may [be] two months unpaid in 2004 (July and August). However, [Louis J.] D'Amato did not specify which payments he had forgiven prior to [February 28, 2005]."

Exhibit five shows that Chimaera owed the plaintiff a total of $54,954.38 for rent, late charges, holdover charges and late charges on the holdover charges for the period between July, 2004, and August, 2005. Of that total amount owed, $25,865.52 was owed for the period prior to February 28, 2005. It also shows that the plaintiff received payments in the amount of $28,814,78 between September, 2004, and July, 2005. Of the total amount received by the plaintiff, $16,165.95 was received prior to February 28, 2005. It is unclear from exhibit five and the testimony at the hearing whether the total amount received applied to the amount owed prior to February 28, 2005, the debt accrued after, or both. If some amounts received by the plaintiff after February 28, 2005, were applied to the debt accrued prior to February 28, 2005, the defendant's obligations under the guarantee would have been extinguished. In any event, the court's conclusion that the plaintiff failed to meet its burden to prove damages for amounts owed by Chimaera prior to February 28, 2005, was not clearly erroneous.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] The plaintiff also claims that attorney's fees and costs should have been awarded pursuant to the terms of the lease. The court did not specifically address the issue of attorney's fees and costs, and, because we affirm the court's conclusions regarding the liability of the guarantor, we also do not reach this issue.