# United States Court of Appeals
## For the First Circuit

No. 18-1719

U.S. BANK TRUST, N.A.,
as Trustee for LSF9 Master Participation Trust,

Plaintiff, Appellee,

v.

JULIA L. JONES,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]


Before

Lynch, Circuit Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.


Thomas A. Cox for appellant.
Matthew A. Fitzgerald, with whom Ashley P. Peterson was on brief, for appellee.
Michael A.F. Johnson and Dirk C. Phillips on brief for Federal Housing Finance Agency, amicus curiae.
Stuart Rossman, Geoff Walsh, J.L. Pottenger, Jr., and Jeffrey Gentes on brief for National Consumer Law Center and Jerome N. Frank Legal Services Organization, amici curiae.
Frank D'Alessandro and Jonathan E. Selkowitz on brief for Pine Tree Legal Assistance, Inc., amicus curiae.

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

May 30, 2019

**SOUTER**, **Associate Justice**.  In this diversity case, appellee U.S. Bank Trust, N.A., sued appellant Julia Jones for breach of contract and breach of promissory note, among other claims, after Jones stopped making payments due to U.S. Bank on her mortgage loan.  At trial, U.S. Bank sought to establish the total amount owed on the loan account by introducing a computer printout, marked as Exhibit 8, that contained an account summary and a list of transactions related to the loan.  The District Court admitted Exhibit 8 into evidence and relied on it in granting judgment to U.S. Bank in the amount of $226,458.28.  We affirm.

## I

Jones argues on appeal that admitting Exhibit 8 violated the Federal Rules of Evidence.  "We review the district court's interpretation of the Federal Rules of Evidence de novo, but its application of those Rules for abuse of discretion."  Bradley v. Sugarbaker, 891 F.3d 29, 33 (1st Cir. 2018).  "[T]his court will not substitute its judgment" in a discretionary evidentiary ruling "for that of the district court unless left with a definite and firm conviction that the court below committed a clear error of judgment."  Clukey v. Town of Camden, 894 F.3d 25, 34 (1st Cir. 2018) (quoting Paolino v. JF Realty, LLC, 830 F.3d 8, 13 (1st Cir. 2016) (internal quotation marks omitted)).

**A**

Rule 803(6), known as the business records exception, authorizes the admission of certain documents under an exception to the usual prohibition against the admission of hearsay statements, that is, statements by an out-of-court declarant offered into evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c), 802. Rule 803(6) provides that "[a] record of an act, event, condition, opinion, or diagnosis" is "not excluded by the rule against hearsay" if:

> "(A) the record was made at or near the time by-or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

Jones says that Exhibit 8 does not meet the requirements of this rule because of the nature of the information the Exhibit contains or is said to rest upon. Exhibit 8 is a summary of Jones's account as a mortgage borrower, and, in particular, of the transactions the mortgage history comprises, that is maintained by

- 4 -

the current independent servicer of Jones's account, Caliber Home Loans, Inc. Critically, however, this record is a product of records of some transactions that took place before Caliber became servicer of Jones's account. The prior entries were created by two other loan servicers, Seterus and Bank of America, and were integrated into Caliber's database when Caliber succeeded them as servicer. According to Jones, these integrated business records from the prior servicers preclude admission of Exhibit 8 under the quoted rule unless supported by testimony of a custodian or qualified witness with personal knowledge of the record keeping of the respective prior servicers.

But there is no categorical rule barring the admission of integrated business records under Rule 803(6) based only on the testimony from a representative of the successor business. "[W]hether a third party's records . . . can be integrated into the records of the offering entity . . . for purposes of admission under the business records exception is not an issue upon which this circuit has reached a uniform conclusion" covering every instance. United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012). Rather, the admissibility of the evidence turns on the facts of each case.

Thus, we have affirmed the admission of business records containing third-party entries without third-party testimony where the entries were "intimately integrated" into the business

- 5 -

records, FTC v. Direct Marketing Concepts, Inc., 624 F.3d 1, 16 n.15 (1st Cir. 2010), or where the party that produced the business records "relied on the [third-party] document and documents such as those[] in his business," United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (internal quotation marks omitted). Conversely, in the absence of third-party evidence, we have rejected the admission of business records containing or relying on the accuracy of third-party information integrated into the later record where, for example, the later business did not "use[] a procedure for verifying" such information, lacked a "self-interest in assuring the accuracy of the outside information," United States v. Vigneau, 187 F.3d 70, 77 & n.6 (1st Cir. 1999) (emphasis omitted), or sought admission of third-party statements made "by a stranger to it," Bradley, 891 F.3d at 35 (quoting Vigneau, 187 F.3d at 75 (alterations omitted)). The key question is whether the records in question are "reliable enough to be admissible." Direct Marketing Concepts, 624 F.3d at 16 n.15.

In answering that question, we are mindful that the "reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation." Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules. The rule seeks "to

- 6 -

capture these factors and to extend their impact" by applying them to a "regularly conducted activity." Id.

Based on the facts presented here, we cannot say that the District Court abused its discretion in finding Exhibit 8 with its integrated elements reliable enough to admit under Rule 803(6). Facts in the record, including testimony provided by an employee of Caliber, Letycia Lopez, establish that the servicer relied on the accuracy of the mortgage history and took measures to verify the same. As the District Court explained, Lopez testified that Caliber incorporated the previous servicer's records into its own database and "plac[ed] its own financial interest at stake by relying on those records," and that "Caliber's acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records." 330 F. Supp. 3d 530, 543 (D. Me. 2018); see Trial Tr. 28:3-6, 60:17-19. The District Court also soundly noted that Jones did not "dispute the transaction history by claiming overbilling or unrecorded payments," as she surely could have done if the records were inaccurate. 330 F. Supp. 3d at 544; see Fed. R. Evid. 803(6)(E). Nor has Jones contested the District Court's conclusion that the data revealed "no discrepancies" giving rise to doubt that the business records were trustworthy. 330 F. Supp. 3d at 541; see id. at 544.

Jones seeks to eliminate the significance of the testimony from Lopez by arguing that she was not a "qualified witness" within the meaning of subsection (D) of Rule 803(6). According to Jones, Lopez was not personally involved in the creation of Caliber's records and lacked knowledge about how prior loan servicers maintained their records. But a "qualified witness" "need not be the person who actually prepared the record." Wallace Motor Sales, Inc. v. Am. Motors Sales Corp., 780 F.2d 1049, 1061 (1st Cir. 1985). Rather, a "qualified witness" is "simply one who can explain and be cross-examined concerning the manner in which the records are made and kept." Id. Here, Lopez provided detailed testimony regarding how Caliber maintained its records, Trial Tr. 8-13, and how it verified the accuracy of the records it got from other servicers, id. at 26:22-28:16. Lopez therefore was "qualified" within the meaning of Rule 803(6).

Jones not only fails to eliminate Lopez's competence as a witness, but she also fails to discredit the substance of Lopez's testimony that the incorporated records were reliable owing to the very fact that Caliber put its financial interest at stake by relying on them. Jones claims that any reliance is of little, if any, evidentiary worth, simply because Caliber is a contractor that services the mortgage account, not the holder of the note. According to Jones, if the incorporated information turns out to be unreliable so as to defeat any action to collect the balance

- 8 -

Caliber says is due, the loser will be U.S. Bank, not Caliber. But this is simply unrealistic. If Caliber is shown to be claiming unsupportable facts about an account's history, to the financial detriment of U.S. Bank as assigned payee of a mortgagor's note, Caliber's business with U.S. Bank will suffer accordingly, as will its appeal in the eyes of other note holders who contract or might contract with Caliber for its services. Since Jones gives us no sufficient reason to refuse to apply the evidence of reliance here, we treat it as we did in Doe, 960 F.2d at 223, as evidence of incorporation's reliability.

Nor are we persuaded by Jones's fallback argument that it was error to interpret Federal Rule 803(6) in a manner inconsistent with the corresponding state rule of evidence in Maine, where this diversity suit was brought. The District Court was doing nothing other than following the ordinary practice of federal courts to apply the Federal Rules of Evidence in diversity cases. See Downey v. Bob's Discount Furniture Holdings, Inc., 633 F.3d 1, 8 (1st Cir. 2011).

Of course, we leave open the possibility that there could be instances in which the State rule counts as a "substantive" rule that must be applied under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). See McInnis v. A.M.F., Inc., 765 F.2d 240, 245 (1st Cir. 1985). But this is no such case, given that Federal Rule 803(6) "endeavor[s] to reach almost identical

results" as its Maine counterpart.  Id.  While Federal Rule 803(6) and Maine Rule 803(6) were not entire facsimiles of one another at the time the District Court decided this case, an authoritative treatise on Maine evidence had noted that the State and Federal versions of the rule were "substantively the same," Richard H. Field & Peter L. Murray, Maine Evidence 417 (4th ed. 1997), and the State has recently revised its Rule 803(6) so that its text is now identical to the Federal Rule, Me. R. Evid. 803(6) advisory committee's note to August 2018 amendment (amending the Maine Rule "to follow a corresponding 2014 amendment" to the Federal Rule). Maine cases also take the same basic approach as our cases do: Maine permits the admission of integrated business records if the evidence "demonstrate[s] the reliability and trustworthiness of the information." Beneficial Me. Inc. v. Carter, 25 A.3d 96, 102 (Me. 2011).[1]  Because there is no material conflict between the Maine Rule and the Federal Rule, there is no ground for requiring the Maine Rule to be applied in this case.

---

[1] Jones alleges that two recent decisions of the Supreme Judicial Court of Maine reject an integrated business records exception.  See KeyBank Nat'l Ass'n v. Estate of Quint, 176 A.3d 717, 721-722 (Me. 2017); Deutsche Bank Nat'l Tr. Co. v. Eddins, 182 A.3d 1241, 1244-45 (Me. 2018).  But both decisions rely on Carter and explicitly acknowledge that integrated business records may be admitted into evidence.  KeyBank, 176 A.3d at 721; Deutsche Bank, 182 A.3d at 1244.  Even if these Maine cases are not identical to our cases in all of their particulars, they follow the same case-by-case reliability approach to the admissibility of integrated business records.  See Carter, 25 A.3d at 101.

In sum, we reject Jones's challenge under Rule 803(6) to the District Court's admission of Exhibit 8. We do so, however, while acknowledging that the business records of loan servicers may not always carry the requisite indicia of reliability. See, e.g., Brief for National Consumer Law Center and Jerome N. Frank Legal Services Organization as Amici Curiae 12-18. It therefore bears repeating: the admission of integrated business records in this context must turn, as it does here, on the particular facts of each case.

**B**

Jones also claims that the District Court's admission of Exhibit 8 violated Federal Rules of Evidence 901, 1001, and 1002. Rule 901(a) provides that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The related Rule 1002 requires "[a]n original writing, recording, or photograph . . . in order to prove its content unless these rules or a federal statute provides otherwise," while Rule 1001(d) includes the provision that for "electronically stored information," an "original" is "any printout . . . if it accurately reflects the information."

The District Court did not abuse its discretion in concluding that Exhibit 8 satisfied these rules. Lopez testified that she "reviewed personally the records in this particular case" and "found them to be accurate," Trial Tr. 28:9-13, and

- 11 -

specifically attested that Exhibit 8 was "an account summary and payment history" printed from Caliber's records. Trial Tr. 25:19-26:15. That testimony is sufficient to "support a finding" that Exhibit 8 "is what the proponent claims it is," as Rule 901(a) requires, and it also suffices to support a finding that Exhibit 8 is a "printout" that "accurately reflects" the data in Caliber's database and is thus an "original writing," as Rules 1001(d) and 1002 require.

Jones argues that Lopez's testimony was inadequate because it did not supply "[e]vidence describing a process or system and showing that it produces an accurate result," as is contemplated by Rule 901(b)(9). But Rule 901(b)(9) offers just one illustrative "example[] . . . of evidence that satisfies the requirement" of Rule 901(a), and a proponent may satisfy Rule 901(a) by other means. Fed. R. Evid. 901(b). Thus, even in the absence of expert testimony regarding the accuracy of the process, we have held that the testimony of "someone knowledgeable, trained, and experienced in analyzing" the program's results may show that "the item is what the proponent claims it is," as Rule 901(a) requires. United States v. Espinal-Almeida, 699 F.3d 588, 612-613 (1st Cir. 2012). Here, Lopez's testimony amply demonstrates that she was "knowledgeable, trained, and experienced" in analyzing Caliber's records. Id.; see Trial Tr. 32:1-33:11. And her testimony indicated that Exhibit 8 is an accurate printout

- 12 -

from Caliber's database.  Trial Tr. 25:19-26:15.  There was no abuse of the District Court's discretion in admitting Exhibit 8.

## II

There is one final matter of housekeeping.  Jones claims that the District Court erred by awarding U.S. Bank approximately $23,000 in charges for escrow, title fees, and inspections that were not recoverable under the terms of her promissory note. Because she did not raise that claim in the District Court, our review is for plain error.  Blockel v. J.C. Penney Co., 337 F.3d 17, 25 (1st Cir. 2003).  Jones's note permits recovery for "costs and expenses in enforcing this Note to the extent not prohibited by applicable law."  Note 6(E).  Amounts owed for escrow, title fees, and inspections qualify as "costs and expenses" incurred in "enforcing this Note," for they stem from U.S. Bank's efforts to maintain the property securing the note, and they likely would not have been incurred absent Jones's breach.  Jones has not identified any contrary evidence demonstrating that the award of these charges was error, plain or otherwise.

Affirmed.