******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JENZACK PARTNERS, LLC *v.* STONERIDGE ASSOCIATES, LLC ET AL.
## (SC 20188)
## (SC 20189)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

### *Syllabus*

The plaintiff sought to foreclose a mortgage executed by the defendant T
in support of her personal guarantee of a promissory note. The named
defendant had obtained a construction loan from the original lender, S
Co., and executed a promissory note in connection with that transaction.
Subsequently, the note was modified, and T executed a limited guarantee
in favor of S Co. ensuring payment of the amount due under the modified
note. In order to secure T's guarantee, T executed a mortgage in favor
of S Co. on certain of T's real property. S Co. subsequently assigned
T's mortgage and interest in the note to the plaintiff. At that time, S Co.
and the plaintiff executed an allonge endorsing the note to the plaintiff
as the obligee. After the named defendant defaulted on the note, the
plaintiff sought, inter alia, to collect on T's guarantee and to foreclose the
mortgage on T's property. At the foreclosure trial, the plaintiff introduced
into evidence an exhibit that documented its computation of the amount
then due on the note, which incorporated an initial entry concerning
the original balance on the note that was based on information that S
Co. had provided to the plaintiff in conjunction with S Co.'s sale of the
note. The trial court rendered a judgment of strict foreclosure, and T
appealed to the Appellate Court, claiming that the plaintiff lacked stand-
ing to foreclose the mortgage and that the plaintiff's exhibit failed to
establish the amount then due on the note because the initial entry in
the exhibit was inadmissible hearsay. The Appellate Court concluded
that the trial court correctly determined that the plaintiff had standing
to foreclose the mortgage but reversed with respect to the admission
of the exhibit under the statutory (§ 52-180) business records exception
to the hearsay rule, concluding that the original note balance for the
computation of debt was not calculated by the plaintiff and that it was
received, rather than made, in the ordinary course of business, and,
thus, the exhibit failed to satisfy the requirements of the business records
exception. The Appellate Court reversed the trial court's judgment of
foreclosure as to T and remanded the case for a new trial. On the
granting of certification, the plaintiff and T filed separate appeals with
this court. *Held*:

1. The Appellate Court correctly determined that the plaintiff had standing
   to foreclose T's mortgage: although the allonge that was executed in
   conjunction with the assignment of the note from S Co. to the plaintiff
   did not explicitly incorporate or mention T's guarantee, T's guarantee,
   when read in its entirety, clearly provided that its benefit would continue
   to any and all future holders of the note, which included the plaintiff
   as the uncontested owner of the note; moreover, S Co.'s assignment of
   the note to the plaintiff operated as an assignment of T's guarantee
   because the explicit language in T's guarantee indicated that it was the
   intention of S Co. and T that T's guarantee would follow the note to
   future note holders, including the plaintiff.

2. The Appellate Court incorrectly concluded that the initial entry provided
   by S Co. and contained in the exhibit setting forth the plaintiff's calcula-
   tion of debt owed on the note was not admissible under the business
   records exception to the hearsay rule and that, without that entry, the
   trial court could not properly determine the amount owed: when one
   business provides information to another business in the context of a
   business transaction, as is often the case with loan records transferred
   in connection with the purchase and sale of debt, the business acquiring
   the information and seeking to introduce the information under the
   business records exception simply must show that the information it
   acquired became part of its own business record as part of the transac-
   tion in which the provider of the information had a business duty to

transmit accurate information, as it is the providing business' duty to report the information in the business context that provides the reliability to justify its admission under the business records exception; in the present case, the plaintiff did not introduce a document as a business record that was created by a third party to prove the debt owed on the note at the time it was assigned to the plaintiff but, rather, introduced its own record of the debt that incorporated an initial entry that S Co. had provided to the plaintiff in conjunction with the sale of the note, and, because S Co. had a business duty to report the amount due on the note to the plaintiff as part of the sale of the note and the plaintiff incorporated the amount due as provided by S Co. into its own business records, this was sufficient to establish that the exhibit setting forth the plaintiff's calculation of debt owed on the note, including the initial entry that S Co. had provided, was admissible under the business records exception to the hearsay rule; moreover, although T could have disputed the accuracy of the initial entry by highlighting the fact that the plaintiff failed to introduce supplemental documentation or testimony indicating that the plaintiff had accurately recorded the amount of debt as provided by S Co. in the initial entry or by offering contradictory evidence as to the amount due in order to discredit the weight of that evidence, the trial court found that T had failed to do so.

Argued September 24, 2019—officially released January 14, 2020

*Procedural History*

Action seeking, inter alia, to foreclose a mortgage, brought to the Superior Court in the judicial district of Middlesex, where the named defendant et al. were defaulted for failure to appear; thereafter, the action was withdrawn as to the defendant Joseph Tine; subsequently, the case was tried to the court, *Domnarski, J.*; judgment of strict foreclosure, from which the defendant Jennifer Tine appealed to the Appellate Court; thereafter, the court, *Domnarski, J.*, granted the plaintiff's motion for attorney's fees, and the defendant Jennifer Tine filed an amended appeal with the Appellate Court, *DiPentima, C. J.*, and *Lavine* and *Eveleigh, Js.*, which reversed the judgment of the trial court only as to the defendant Jennifer Tine and remanded the case for a new trial, and the plaintiff and the defendant Jennifer Tine, on the granting of certification, filed separate appeals with this court. *Reversed in part*; *judgment directed*.

*Richard P. Weinstein*, with whom, on the brief, was *Sarah Black Lingenheld*, for the appellant in Docket No. SC 20188 and the appellee in Docket No. SC 20189 (defendant Jennifer Tine).

*Houston Putnam Lowry*, for the appellee in Docket No. SC 20188 and the appellant in Docket No. SC 20189 (plaintiff).

*Opinion*

KAHN, J. The plaintiff, Jenzack Partners, LLC (Jenzack), and the defendant[1] Jennifer Tine (Tine) separately appeal from the judgment of the Appellate Court, which reversed the judgment of the trial court ordering strict foreclosure.[2] See *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, 183 Conn. App. 128, 143, 192 A.3d 455 (2018). These appeals require us to consider (1) whether an entity that was assigned a promissory note as well as a mortgage granted as collateral to secure a personal guarantee of that promissory note has standing to foreclose on the mortgage despite the fact that the guarantee was not explicitly assigned to the foreclosing party, and (2) whether an initial entry into a record of debt is admissible under the business records exception to the hearsay rule when that entry was provided by a third party in the course of the sale of the debt. As to the issue of standing, Tine claims that the Appellate Court incorrectly concluded that Jenzack had standing to foreclose a mortgage executed in support of a personal guarantee of a promissory note given by a third party because Jenzack did not receive a written assignment of the personal guarantee. As to the issue of hearsay, Jenzack claims that an adequate foundation was laid for the entirety of the record of debt to be admitted into evidence (exhibit 22) pursuant to the business records exception even though the initial entry was provided by a third party. Although we agree with the Appellate Court's conclusion that Jenzack had standing to foreclose the mortgage, we conclude that the Appellate Court incorrectly determined that the business records exception did not apply to Jenzack's calculation of the debt owed on the promissory note. Accordingly, we reverse in part the judgment of the Appellate Court.

The Appellate Court set forth the following facts and procedural history. "On July 13, 2006 . . . Stoneridge Associates, LLC (Stoneridge), obtained a construction loan in the amount of $1,650,000 from a nonparty, Sovereign Bank (Sovereign). At that time, Stoneridge executed a promissory note (Stoneridge note) evidencing its promise to repay the loan. The note was secured by various personal guarantees; Premier [Building & Development, Inc.], [Ronald] Gattinella, [Patrick T.] Snow and Joseph Tine each executed guarantees in favor of Sovereign guaranteeing repayment of the sums due under the note." *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, supra, 183 Conn. App. 131; see footnote 1 of this opinion. "On December 23, 2008, the Stoneridge note was modified via a modification agreement. On the same date, [Tine] executed a limited guarantee in favor of Sovereign guaranteeing repayment of the sum due under the Stoneridge note as modified [(Tine guarantee)]. In order to secure their respective guarantees, [Tine] and Joseph Tine executed a mort-

gage (Tine mortgage) in favor of Sovereign on their residential property . . . in Cromwell.[3] [Tine's] nonrecourse guarantee limited her liability solely to her interest in the Cromwell property. On August 27, 2009, and May 6, 2010, [Tine] executed reaffirmations of her guarantee in connection with subsequent modifications of the Stoneridge note.

"On March 22, 2012, Sovereign assigned [the Tine] mortgage and interests in the Stoneridge note to [Jenzack]." (Footnote in original.) *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, supra, 183 Conn. App. 131–32. "Specifically, Sovereign and [Jenzack] executed an allonge endorsing the Stoneridge note to [Jenzack] as the obligee of the note. The Tine mortgage was assigned to [Jenzack] through an 'Assignment of Open-End Mortgage Deed.' " Id., 132 n.3. "In August, 2012, [Jenzack] commenced this action, seeking, inter alia, to foreclose the Tine mortgage. In the operative revised complaint dated April 2, 2013, [Jenzack] alleged that, because Stoneridge had defaulted on the underlying Stoneridge note, [Jenzack] was entitled to declare the entire balance of the note due and payable. [Jenzack] alleged that Sovereign had assigned all of its interests in the Stoneridge note, including continuing guarantees executed by Premier, Gattinella, Snow, and Joseph Tine, the limited guarantee executed by [Tine], and the Tine mortgage. Because [Jenzack] was the current holder of the Stoneridge note, [Jenzack] claimed it was entitled to collect on all underlying guarantees and [to] foreclose the [Tine] mortgage. On April 26, 2013, [Tine] filed an answer that denied the substance of the complaint . . . ."[4] (Footnote omitted.) Id., 132–33.

"A bench trial was held on August 16, 2016. At trial, [Jenzack] claimed that the assignment of the Stoneridge note necessarily carried with it an assignment of all underlying guarantees, including [Tine's] limited guarantee secured by the Tine mortgage. [Jenzack] also introduced into evidence exhibit 22, a computation of the current amount due on the [Stoneridge] note. In response, [Tine] claimed that the court lacked subject matter jurisdiction to render a judgment of foreclosure against her because her guarantee was not specifically assigned to [Jenzack] in the allonge. [Tine] also claimed that [Jenzack] failed to establish the amount of debt due on the [Stoneridge] note because evidence of the computation of debt, which included a starting balance provided to [Jenzack] by Sovereign, was inadmissible hearsay."[5] Id., 133. "On December 1, 2016, the trial court issued a memorandum of decision [and entered] an order of strict foreclosure on the Tine mortgage. The court held that [Jenzack] had standing to foreclose the [Tine] mortgage that secured the [Tine] guarantee and that [Jenzack] had established the amount of debt due on the [Stoneridge] note through the testimony of William Buland, [Jenzack's] authorized representative, and the computation of debt in exhibit 22." Id.

Before the Appellate Court, Tine argued that "the trial court improperly (1) held that [Jenzack] had standing to foreclose the Tine mortgage [and] (2) determined that [Jenzack's] exhibit 22 was sufficient to establish the amount due on the [Stoneridge] note . . . ."[6] Id. Although the Appellate Court agreed with the trial court that Jenzack had standing to foreclose the Tine mortgage; id., 139; it reversed the trial court's decision on the admissibility of the record of debt owed on the Stoneridge note under the business records exception, concluding that the starting balance for the computation of debt "was not calculated by [Jenzack], and, therefore, it was received, rather than made, in the ordinary course of business." Id., 143. On the basis of this conclusion, the Appellate Court held that the initial entry did not satisfy the requirements of the business records exception, and, therefore, the trial court could not properly determine the amount of debt. Id., 142–43. The Appellate Court reversed the trial court's judgment of strict foreclosure as to Tine and remanded the case for a new trial. Id., 146. These certified appeals followed. See footnote 2 of this opinion.

I

STANDING

Because the question of standing implicates subject matter jurisdiction, we first consider Tine's claim in Docket No. SC 20188 that the Appellate Court improperly held that Jenzack had standing to foreclose the Tine mortgage. Tine claims that Jenzack does not have standing to foreclose the Tine mortgage because Sovereign did not expressly assign the Tine guarantee to Jenzack in the allonge, and, therefore, Jenzack is not a party to the Tine guarantee.[7] Although Tine correctly points out that the allonge did not explicitly incorporate or mention the Tine guarantee, we conclude that Jenzack nonetheless had standing according to the language of the Tine guarantee.

"[S]tanding is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 161, 75 A.3d 651 (2013). "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Pond View, LLC* v. *Planning & Zoning Commission*, 288 Conn. 143, 155, 953 A.2d 1 (2008). "It is well established that, in determining whether a court has subject matter

jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Financial Consulting, LLC* v. *Commissioner of Ins.*, 315 Conn. 196, 226, 105 A.3d 210 (2014).

"The language of the assignment . . . does not by itself govern our resolution of the issue. We also turn to the language of the guarantee." *D'Amato Investments, LLC* v. *Sutton*, 117 Conn. App. 418, 422, 978 A.2d 1135 (2009). Even though a guarantee is not explicitly assigned along with the underlying obligation it is ensuring, guarantors are "bound by the contractual provisions [in the guarantee] to which they agreed." See, e.g., *One Country, LLC* v. *Johnson*, 137 Conn. App. 810, 820, 49 A.3d 1030 (2012), aff'd, 314 Conn. 288, 101 A.3d 933 (2014). Although the allonge expressly assigned only the Stoneridge note to Jenzack, the language of the Tine guarantee should be considered to determine whether the parties to the guarantee—Tine and Sovereign—intended the guarantee to follow the Stoneridge note. See *Hudson United Bank* v. *Endeavor Group*, 96 Conn. App. 447, 452, 901 A.2d 64 (2006) ("[i]n interpreting the intention of the parties to the guarantee, the referee was entitled to rely on, inter alia, the language of the guarantee"); see also *One Country, LLC* v. *Johnson*, supra, 816 ("[a] guarantee, similar to a suretyship, is a contract, in which a party, sometimes referred to as a secondary obligor, contracts to fulfill an obligation upon the default of the principal obligor" [internal quotation marks omitted]); cf. *Friezo* v. *Friezo*, 281 Conn. 166, 199, 914 A.2d 533 (2007) ("[c]ontracting parties are normally bound by their agreements . . . irrespective of whether the agreements embodied reasonable or good bargains" [internal quotation marks omitted]). This court has stated that, where the guarantee of a note is unconditional or absolute, "default of the maker or endorser to pay the note promptly . . . [causes] the guarantor [to] become liable to the holder, and the relation of debtor and creditor was at once established between the guarantor and the holder of the note." (Internal quotation marks omitted.) *Perry* v. *Cohen*, 126 Conn. 457, 459, 11 A.2d 804 (1940).

Although this court has not addressed this exact issue of the interpretation of a guarantee that was not explicitly assigned to a subsequent party seeking to enforce the guarantee, we are persuaded by the Appellate Court's reasoning in applying the foregoing principles. In *Hudson United Bank*, the defendant executed a promissory note and continuous loan guaranty in 1995, in favor of a third-party bank. *Hudson United Bank* v. *Endeavor Group*, supra, 96 Conn. App. 449. The third-party bank then merged with a second third-party bank before being consolidated with the plaintiff bank. Id., 449–50. In 1998, the plaintiff bank provided a loan to the defendant, and the defendant executed a promissory note in favor of the plaintiff bank; a portion of the loan was used to pay off the 1995 loan. Id. The defendant

then defaulted on the 1998 loan. Id., 450. The plaintiff bank sought to collect from the defendant under the 1995 continuous guarantee, and the defendant objected on the ground that he was liable under the 1995 guarantee only to the first bank and not to subsequent issuers of promissory notes, including the plaintiff bank. Id. The Appellate Court concluded that, "[i]n interpreting the intention of the parties to the guarantee, the [trial court] was entitled to rely on, inter alia, the language of the guarantee." Id., 452. In that case, the 1995 guarantee explicitly provided that the borrower guaranteed payment of "any and every obligation and liability of [the borrower] to [the original third-party bank] of whatsoever nature and howsoever evidenced, *whether now existing or hereafter incurred* . . . ." (Emphasis in original; internal quotation marks omitted.) Id. In addition, it stated that "[t]his guarant[ee] shall inure to the benefit of the [original third-party bank], its successors, legal representatives, and assigns." (Internal quotation marks omitted.) Id., 453. On the basis of this language, the court concluded that "the guarantee clearly provides that its benefit would continue to any and all successors of [the original third-party bank], including [the second third-party bank] and the [plaintiff bank]." Id.

Similarly, in *D'Amato Investments, LLC*, a third-party corporation entered into a commercial lease with third-party property owners, and the defendant, who was the president of the third-party corporation, executed a personal guarantee of the lessee's obligation thereunder. *D'Amato Investments*, *LLC* v. *Sutton*, supra, 117 Conn. App. 420. The third-party property owners assigned the lease to the plaintiff, and, subsequently, the defendant's employment with the third-party corporation was terminated. Id. The third-party corporation failed to consistently pay rent and related fees before finally being evicted, and the plaintiff brought an action against the defendant to enforce the guarantee and to recover the amounts owed by the third-party corporation. Id., 420–21. "The defendant claim[ed] that the plaintiff lack[ed] standing to enforce the guarantee because the plaintiff [was] not a party to the guarantee. The defendant argu[ed] that although the lease was assigned from [the third-party property owners] to the plaintiff, the guaranty itself was never assigned to the plaintiff." Id., 421–22. The Appellate Court concluded that the assignment of the lease "did not explicitly incorporate or mention the guarantee signed by the defendant. The language of the assignment, however, [did] not by itself govern [the court's] resolution of the issue. [The court] also turn[ed] to the language of the guarantee." Id., 422. In that case, the guarantee provided that "[t]he undersigned guarantees to Landlord, *Landlord's successors and assigns*, the full performance and observance of all covenants, conditions and agreements . . . ." (Emphasis in original; internal quotation marks

omitted.) Id. In light of this language, the court rejected the defendant's claim that the assignee lacked standing to enforce the personal guarantee. Id., 423.

In the present case, Sovereign did not explicitly assign the Tine guarantee to Jenzack, so we turn to the language of the Tine guarantee, titled "Limited Guaranty Agreement," to determine the intention of Sovereign and Tine when the guarantee was executed.[8] The Tine guarantee provides in relevant part:

"The undersigned, JENNIFER J. TINE . . . (hereinafter referred to as 'Guarantor') is executing this Continuing Guaranty Agreement to induce SOVEREIGN BANK ('Lender') to amend a construction loan in the amount of $1,650,000 (the 'Loan') to STONERIDGE ASSOCIATES, LLC ('Borrower') made pursuant to a commitment letter dated July 13, 2006 ('Commitment'). The Loan is evidenced by a Promissory Note ('Note') in the above amount . . . ." The Tine guarantee further provided: "1. Payment and Performance. Guarantor does hereby fully guarantee to Lender that Borrower shall make due and punctual payment of the principal of the Note and the interest thereon . . . . If Borrower shall at any time fail to make any such payments or performance, then . . . Guarantor shall make such payment or payments to Lender, this Guaranty being a guaranty of payment and not of collection . . . .

\* \* \*

"14. Bind and Inure. The provisions of this Guaranty . . . shall bind and inure to the benefit of the parties hereto *and their heirs, successors and assigns* . . . the word 'Lender' as used herein *shall mean not only the original Lender named in the first paragraph of this Guaranty, but also all future holders of the Note and Loan Documents* . . . ." (Emphasis added.)

When read in its entirety, the Tine guarantee clearly provides that its benefit would continue to any and all future holders of the Stoneridge note, which includes Jenzack. Under these circumstances, the assignment of the Stoneridge note operated as an assignment of the Tine guarantee because the explicit language included in the Tine guarantee indicates that it was the intention of Sovereign and—more importantly—Tine that the guarantee would follow the Stoneridge note to future note holders. As it is uncontested that Jenzack owns the Stoneridge note, Jenzack has standing to foreclose the Tine mortgage.[9] See *Brentwood Scottsdale, LLC* v. *Smith*, Docket No. 1 CA-CV 14-0067, 2015 WL 728364, \*2 (Ariz. App. February 19, 2015) (adopting general rule of law; see Restatement [Third], Suretyship & Guaranty § 13 [5], pp. 65–66 [1996]; but relying on language of personal guarantee as further evidence that assignment of note operated as assignment of guarantee).

II

HEARSAY

We next consider Jenzack's claim in its appeal in Docket No. SC 20189 that the Appellate Court incorrectly held that the initial entry in Jenzack's calculation of debt owed on the Stoneridge note as shown on exhibit 22 was not admissible pursuant to General Statutes § 52-180,[10] colloquially referred to as the business records exception to the hearsay rule and that, without that initial entry, Jenzack was not able to establish the amount owed on the Sovereign note.[11] We conclude that the entirety of Jenzack's record of debt owed on the Sovereign note was admissible under the business records exception.

"To the extent [that admissibility] of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay . . . [is a] legal [question] demanding plenary review." *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007); see also *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 599 n.7, 717 A.2d 713 (1998) (*Bedford II*) ("[b]ecause we review the trial court's interpretation of the statute, and the statute's applicability to the proffered documents, our review is plenary").

In the present case—unlike in previous cases before this court—Jenzack did not attempt to introduce a document as a business record that was created by a third party, Sovereign, to prove the debt owed on the Stoneridge note at the time it was assigned to Jenzack. Instead, Jenzack introduced its own record of the debt owed on the Stoneridge note that incorporated an initial entry that Sovereign had provided to Jenzack in conjunction with the sale of the note. Jenzack offered this document as its business record of the debt owed on the note. Jenzack, however, did not offer into evidence documentation or witness testimony regarding the initial figure in the form it was actually received from Sovereign. Tine claims that the statement of the initial debt as contained in exhibit 22 is hearsay without documentation or testimony evidencing that Jenzack accurately recorded the amount of the debt provided by Sovereign. See footnote 5 of this opinion. This is an issue of first impression for this court. See *Bedford II*, supra, 246 Conn. 607 ("[i]f we had not decided in . . . this opinion that [the] exhibit was admissible, we would be required to determine whether a record created by a subsequent holder of a note, based on an initial figure from a failed bank's account books not in evidence, could be admitted as a business record of the second entity"); cf. *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 757–58, 680 A.2d 301 (1996) (*Bedford I*) (holding that witness testimony as to amount of debt was inadmissible when witness did not have personal knowledge of debt or produce documentation evidencing amount of debt, but noting that "[the

witness'] testimony [was not offered] for the limited purpose of laying a foundation for the entry of the documents into evidence, but, rather, as evidence of the debt").

"The initial rationale for the [business records] exception was that, although hearsay, business records [are] trustworthy because their creators had relied on the records for business purposes." *Bedford II*, supra, 246 Conn. 600. Because of the trustworthiness of business records, § 52-180 " 'should be liberally interpreted' in favor of admissibility." Id., 603; see also *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 485, 586 A.2d 1157 (1991). Section 52-180 (b) provides that a record "shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility." As such, we have held that the "witness introducing the document need not have made the entry himself or herself . . . [or] have been employed by the organization during the relevant time period. . . . In addition, [t]here is no requirement in § 52-180 . . . that the documents must be prepared by the organization itself to be admissible as that organization's business records." (Citation omitted; internal quotation marks omitted.) *Bedford II*, supra, 603. Furthermore, "[t]he proponent need not prove the accuracy of the record; its weight is an issue for the trier of fact." Id., 602.

When a party introduces a document that it did not create but that it received from a third party, the business records exception will apply only if the information contained in the document is "based on the entrant's own observation or on information of others whose business duty it was to transmit it to the entrant." (Internal quotation marks omitted.) *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 794, 595 A.2d 839 (1991). "Where the prior owner of the note had a legitimate business duty to provide to the next holder the information used to generate the payment history, the printout of that information was the business record of the present holder." *Premier Capital, Inc.* v. *Grossman*, Docket No. CV-99-0334654-S, 2000 WL 1838695, *4 (Conn. Super. November 22, 2000) (citing *SKW Real Estate Ltd. Partnership* v. *Gallicchio*, 49 Conn. App. 563, 577, 716 A.2d 903, cert. denied, 247 Conn. 926, 719 A.2d 1169 [1998]), rev'd in part on other grounds, 68 Conn. App. 51, 52, 789 A.2d 565 (2002); see also *Bedford II*, supra, 246 Conn. 603 (" '[t]here is no requirement in § 52-180 . . . that the documents must be prepared by the organization itself to be admissible as that organiza-

tion's business records' "). If part of the data was provided by another business, as is often the case with loan records in connection with the purchase and sale of debt, the proponent does not have to lay a foundation concerning the preparation of the data it acquired but must simply show that these data became part of its own business record as part of a transaction in which the provider had a business duty to transmit accurate information. See *Premier Capital, Inc.* v. *Grossman,* supra, *5, citing *Bedford II,* supra, 604.

This court's precedents regarding the admission of business records that include information received from third parties have only involved instances in which documentation from the third party was offered into evidence as a business record of the offering party. As previously noted, Jenzack did not offer documentation from Sovereign as evidence of the initial entry into Jenzack's record of debt owed on the Stoneridge note. Tine claims that, without supporting documentation or testimony from Sovereign to attest to its accuracy, the initial entry is not part of Jenzack's business record. We conclude, however, that—regardless of whether supporting documentation or testimony from the third party is offered—it is the third party's "duty to report [the information] in a business context which provides the reliability to justify [the business records exception to the hearsay rule]." *State* v. *Milner,* 206 Conn. 512, 521, 539 A.2d 80 (1988); see *D'Amato* v. *Johnston,* 140 Conn. 54, 59, 97 A.2d 893 (1953); see also *U.S. Bank Trust, N.A.* v. *Jones,* 925 F.3d 534, 538 (1st Cir. 2019) ("[t]he key question is whether the records in question are reliable enough to be admissible" [internal quotation marks omitted]). This reliability is further strengthened, in our view, when the entity receiving the information from a third party, with a business duty to report it, subsequently integrates that information into the entity's own business records and has a "self-interest in [ensuring] the accuracy of the outside information . . . ." (Internal quotation marks omitted.) *U.S. Bank Trust, N.A.* v. *Jones,* supra, 538; see also *Federal Deposit Ins. Corp.* v. *Carabetta,* 55 Conn. App. 369, 394, 739 A.2d 301, cert. denied, 251 Conn. 927, 742 A.2d 362 (1999). By relying on information from a third party, an entity stakes not only its livelihood on the accuracy of the information received but also its reputation as being a trustworthy entity with which to do business in the future. See generally *U.S. Bank Trust, N.A.* v. *Jones,* supra, 538–39.

Furthermore, a business record is admissible if the information therein is reliable, which, in the case of information provided by a third party, is established by the third party's business duty to report the information. "[T]here is no requirement that the accuracy of a business record be proved as a prerequisite to its admission." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Carabetta,* supra, 55 Conn. App.

375. In addition, once a reliable business record is admitted, there is no presumption that it is accurate, and "the circumstances of the making of the [record] may be shown to affect the weight of that evidence," as its "credibility [remains] a question for the trier of fact." (Internal quotation marks omitted.) Id.; see also *State* v. *Ward*, 172 Conn. 163, 170, 374 A.2d 168 (1976). A defendant is free to undertake discovery concerning the accuracy of the information in a business record as well as to introduce or cross-examine witnesses about its accuracy. Any contention that the information might be inaccurate or lack veracity, therefore, "goes to the weight of the document, not its admissibility." *Webster Bank* v. *Flanagan*, 51 Conn. App. 733, 748, 725 A.2d 975 (1999); see also *Bedford II*, supra, 246 Conn. 602.

The First Circuit Court of Appeals recently issued a decision with facts similar to those at issue in the present case. We find that court's analysis persuasive. In that case, the bank "sought to establish the total amount owed on the loan account by introducing a computer printout [maintained by the current loan servicer of the borrower's account] that contained an account summary and a list of transactions related to the loan." *U.S. Bank Trust, N.A.* v. *Jones*, supra, 925 F.3d 536. Similar to Jenzack's record of debt in the present case, the record in *Jones* included "prior entries [that] were created by two other loan servicers . . . and were integrated into [the current loan processor's] database when [the current loan processor] succeeded them as servicer." Id., 537. Noting that "there is no categorical rule barring the admission of integrated business records under [the business records exception] based only on the testimony from a representative of the successor business," the First Circuit relied on the fact that the previous loan processors had a business duty to report the amount due on the loan to the current loan processor, and the current loan processor placed "its own financial interest at stake by relying on" the records. Id., 537–38. Furthermore, the court noted that the borrower "did not dispute the transaction history by claiming overbilling or unrecorded payments, as she surely could have done if the records were inaccurate." (Internal quotation marks omitted.) Id., 538. On the basis of these circumstances, the First Circuit held that the computer printout evidencing the amount owed on the borrower's loan was admissible under the federal business records exception to the hearsay rule. Id., 539–40.

In the present case, the trial court credited the testimony of Buland that "Sovereign had attested to the balance due on the note as part of the transaction between Sovereign and [Jenzack]." Thus, Sovereign had a business duty to report the amount due on the Stoneridge note to Jenzack as part of the sale of the debt; Sovereign was not merely volunteering the information.

See *State* v. *Milner*, supra, 206 Conn. 520–21 (holding that one page police report detailing contents of telephone call was inadmissible as business record when caller was anonymous and had no duty to report). In addition, the trial court noted that "[Buland] relied upon data provided by Sovereign to establish the outstanding principal balance and accrued interest on the note as of January 17, 2012—the starting date of [Jenzack's] computation," as evidenced by exhibit 22. Jenzack incorporated the amount due on the Stoneridge note provided by Sovereign into its business records and then calculated the accumulating debt from that point forward by applying its own interest rate, thereby placing its own financial interest at stake by relying on that information. This is sufficient to establish that the entirety of Jenzack's record of debt owed on the Stoneridge note—including the initial entry—was admissible as a business record.

At that point, Tine could have disputed the accuracy of the initial entry of Jenzack's business record by highlighting the lack of supplemental documentation or offering contradictory evidence as to the amount due on the note, thereby discrediting the weight of the evidence in the eyes of the trier of fact. The trial court found that "[n]one of the defendants presented any testimony or evidence that contradicted [the] figures" in Jenzack's business record, including the initial entry, as Tine surely could have done if the records were inaccurate.[12] See *U.S. Bank Trust, N.A.* v. *Jones*, supra, 925 F.3d 538.

The judgment of the Appellate Court is reversed with respect to the admissibility of the entry regarding the amount owed on the Stoneridge note under the business records exception to the hearsay rule and the case is remanded to that court with direction to render judgment affirming the judgment of the trial court; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson and Justices Palmer, McDonald, D'Auria, Mullins, Kahn and Ecker. Although Chief Justice Robinson and Justice Kahn were not present at oral argument, they have read the briefs and appendices, and have listened to a recording of oral argument prior to participating in this decision.

[1] Stoneridge Associates, LLC, Premier Building & Development, Inc., Ronald Gattinella, Joseph Tine, Patrick T. Snow, and Webster Bank were also named as defendants. With the exception of Tine and Joseph Tine, all defendants were defaulted for failure to appear or to plead. During the pendency of the foreclosure action, Joseph Tine, Tine's former husband, filed a bankruptcy petition, and the claims against him were subsequently discharged. For the purposes of this opinion, any reference to the defendant or Tine is to Jennifer Tine only. See *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, 183 Conn. App. 128, 131 n.1, 192 A.3d 455 (2018).

[2] In Docket No. SC 20188, this court granted Tine's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that [Jenzack] had standing to foreclose the Tine mortgage because Sovereign Bank had assigned the Stoneridge note to [Jenzack], even though Sovereign Bank did not assign the Tine guarantee, for which the Tine mort-

gage was collateral, to [Jenzack]?" *Jenzack Partners*, *LLC* v. *Stoneridge Associates*, *LLC*, 330 Conn. 921, 193 A.3d 1213 (2018).

In Docket No. SC 20189, this court granted Jenzack's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that exhibit 22 was not admissible under the business records exception?" *Jenzack Partners*, *LLC* v. *Stoneridge Associates*, *LLC*, 330 Conn. 922, 194 A.3d 288 (2018).

The two appeals were not consolidated; the parties submitted separate briefs, and the appeals were not heard together before this court. We resolve the appeals, however, in the same decision, as they share the same facts and procedural history.

[3] "The Tine mortgage was recorded in the Cromwell land records on January 7, 2009. When [Tine] executed her limited guarantee, she and Joseph Tine were joint owners of the Cromwell property. Joseph Tine subsequently transferred his interest in the property to [Tine] in connection with his bankruptcy proceedings. At the time of the foreclosure judgment, [Tine] was the sole owner of the Cromwell property." *Jenzack Partners*, *LLC* v. *Stoneridge Associates*, *LLC*, supra, 183 Conn. App. 132 n.2.

[4] The answer also asserted, as special defenses, lack of consideration, unclean hands, and equitable estoppel, none of which is at issue in this appeal.

[5] Tine concedes that the portion of exhibit 22 reflecting interest accrual, payments, or other transactions that occurred after Jenzack acquired the Stoneridge note was properly admitted under the business records exception. See *Jenzack Partners*, *LLC* v. *Stoneridge Associates*, *LLC*, supra, 183 Conn. App. 139 n.7.

[6] Tine also argued that the trial court improperly awarded Jenzack attorney's fees and expenses, but that issue is not before this court in this appeal. See *Jenzack Partners*, *LLC* v. *Stoneridge Associates*, *LLC*, supra, 183 Conn. App. 144–45.

[7] The allonge, dated March 22, 2012, provides in its entirety:

"Allonge to that certain Promissory Note, as modified, dated July 13, 2006 in the original principal amount of One Million Six Hundred Fifty Thousand and 00/100 ($1,650,000.00) Dollars given by Stoneridge Associates, LLC (the " 'Borrower' ") to Sovereign Bank, N.A., f/k/a Sovereign Bank (" 'Bank' ").

"Pay to the order of Jenzack Partners, LLC, a Maryland Limited Liability Company. This Allonge and endorsement is made without recourse and without any representation or warranty, express or implied, by operation of law or otherwise, including but not limited to any warranty under [New Jersey Statutes Annotated §] 12A:3-416 (a)."

Jenzack also argues that it is the holder of the guarantee due to its assignment in fact, or equitable assignment, by Sovereign. Tine argues, however, that Jenzack did not plead an alternative form of assignment of the Tine guarantee. We resolve the issue of standing on other grounds and, therefore, make no conclusions as to whether Jenzack's claim of standing could have been resolved on any grounds other than those expressed in this opinion.

[8] We observe that Jenzack physically possesses the Tine guarantee and entered it as a full exhibit in the trial court without objection.

[9] Jenzack argues that this court should adopt § 13 of the Restatement (Third) of Suretyship and Guaranty in determining whether Jenzack has standing to foreclose the Tine mortgage. See Restatement (Third), Suretyship & Guaranty § 13 (5), p. 66 (1996) ("an assignment by the obligee of its rights against the principal obligor arising out of the underlying obligation operates as an assignment of the obligee's rights against the secondary obligor arising out of the secondary obligation," except "as otherwise agreed to or provided in subsection [1])." That subsection is based on the premise that "[a] secondary obligation, like a security interest, has value only as an adjunct to an underlying obligation." Id., comment (f), p. 68. Tine argues that we should explicitly reject this Restatement provision. This court has recognized that "guarantors are not obligated on a mortgage because they have a separate and distinct contractual obligation from the promissory note and mortgage under their guarantee." *JP Morgan Chase Bank*, *N.A.* v. *Winthrop Properties*, *LLC*, 312 Conn. 662, 673, 94 A.3d 622 (2014). Although we recognize that a note and a guarantee are separate and distinct obligations, the parties in the present case agreed to contractual language that tied the Tine guarantee to the Stoneridge note, and those two obligations remained connected regardless of the present owner of the Stoneridge note. Under these circumstances, we leave the question of whether to adopt § 13 of the Restatement (Third) for another day.

[10] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

Section 8-4 of the Connecticut Code of Evidence quotes § 52-180; we refer to § 52-180 throughout this opinion.

[11] For a business record to be admissible, "[t]he court must determine . . . that the record was made in the regular course of business, that it was the regular course of such business to make such a record, and that it was made at the time of the act described in the report, or within a reasonable time thereafter." (Internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 602, 717 A.2d 713 (1998). Tine does not challenge any individual element of this requirement but, rather, argues that it is not appropriate to reach this analysis because Jenzack did not provide evidence establishing the accuracy of the initial entry.

[12] Tine claimed that she did not have any information regarding the payment history on the Stoneridge note because she had nothing to do with Stoneridge and Joseph Tine was not obligated to keep her apprised of when he made payments under the terms of their divorce decree. As a result, she was unable to evaluate whether the purported balance stated by Jenzack appeared to be accurate. Regardless of whether Tine had knowledge of the ongoing transactions between Stoneridge and Sovereign, the Tine guarantee included a disclaimer that she "assume[d] all responsibility for being and keeping herself informed of [Stoneridge's] financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment of the [Stoneridge] [n]ote or any other indebtedness of [Stoneridge] to [Sovereign] and the nature, scope, and extent of the risks which [Tine] assume[d] and incur[red] [under the Tine guarantee], and agree[d] that [Sovereign] shall have no duty to advise [Tine] of information known to it regarding such circumstances or risk."