JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION *v.* GEORGE
S. LAKNER*
(SC 20715)

Robinson, C. J., and McDonald, D'Auria,
Ecker and Alexander, Js.

*Syllabus*

The initial plaintiff, J Co., sought to foreclose a mortgage on certain real
 property owned by the defendant. J Co. alleged that the defendant was
 in default because he had failed to pay certain monthly installments of
 principal and interest. The defendant filed an answer and special defense
 in which he denied that he was in default, arguing that he had submitted
 all the required payments. After M Co. was substituted for J Co. as the
 plaintiff, the defendant issued a notice requesting that M Co. produce

* The Superior Court clerk is directed to amend the official case caption
as set forth above.

347 Conn. 476        AUGUST, 2023        477

JPMorgan Chase Bank, National Assn. *v.* Lakner

its complete mortgage file relating to the defendant's mortgage, including all mortgage payment records. In response, M Co. filed a motion for a protective order, requesting that the trial court disallow discovery as to all the documents sought by the defendant. The trial court granted the motion on the grounds that the defendant's request was overly broad and would not lead to the admission of material evidence. Subsequently, at trial, M Co. introduced into evidence an exhibit containing a summary of the loan and payment history of the defendant's account to prove the debt. The defendant's counsel objected, arguing that the defendant was prejudiced because counsel did not have an opportunity to review that exhibit, which was never produced in discovery, or to locate specific documents to contradict the information in the exhibit. The trial court admitted the exhibit, declining to revisit another judge's decision to grant the motion for the protective order. Throughout trial, the defendant's counsel questioned M Co.'s witness, R, a representative of M Co.'s loan servicer, in order to gain an understanding of the basis for the alleged default and to resolve certain discrepancies between the testimony of R and that of the defendant. R testified that the defendant's default had started in 2002 and that the interest rate did not change through the life of the loan. R's testimony was in conflict with the fact that W Co., a predecessor in interest of J Co., was required by the federal Servicemembers Civil Relief Act (SCRA) (50 U.S.C. § 3937 (a)) to lower the defendant's interest rate after the defendant was called to active duty military service in 2001, and with the defendant's testimony that W Co. had lowered his interest rate in 2002. The defendant's counsel also asked R why there were line items in M Co.'s exhibit reflecting insurance premium disbursements in connection with the defendant's account when the defendant testified that he had paid for his homeowners insurance independently of his mortgage. R replied that he had not reviewed M Co.'s mortgage file to determine whether the defendant had been improperly charged for insurance premiums. The trial court rendered a judgment of foreclosure by sale in favor of M Co. The court concluded that the defendant had failed to prove his special defense of payment because the defendant's evidence, consisting primarily of copies of checks, demonstrated some payments to the lender, but it did not demonstrate a lack of default. The trial court also acknowledged that the defendant argued that the SCRA may provide a defense to the foreclosure action but concluded that, even if it were to consider this defense, which the defendant raised for the first time during trial, the defendant did not prove it. The defendant appealed to the Appellate Court, which summarily affirmed the trial court's judgment. On the granting of certification, the defendant appealed to this court. *Held*:

1. The trial court abused its discretion in granting M Co.'s motion for a protective order:

   The trial court's conclusion that the defendant's request for documents contained in M Co.'s mortgage file would not lead to the discovery of

JPMorgan Chase Bank, National Assn. *v.* Lakner

admissible evidence was not supported by the facts and conflicted with the general observation that a lender's mortgage file contains critical information regarding a mortgagor's account.

In a contested foreclosure case, such as the present one, a defendant, or his or her attorney, will need to review those aspects of the lender's file that may lead to the discovery of admissible evidence relating to one or more disputed issues, especially when, as here, the defendant raises the special defense of payment in the face of a claim of default.

In the present case, M Co. introduced documents from its mortgage file into evidence, and R's testimony at trial was based on his extensive review of that file, yet the defendant and his counsel were denied access to that same material, thereby denying them the opportunity to search for potentially critical information that would have supported the defendant's claim that he was not in default.

Moreover, the trial court incorrectly concluded that the defendant's request seeking production of M Co.'s mortgage file was overly broad, as the mortgage file contained records that comprised the source material that gave rise to M Co.'s foreclosure action, and the defendant was not required to rely solely on M Co.'s summary of his payment history but was entitled to review the underlying records themselves to confirm that the summary was accurate.

Furthermore, M Co. could not prevail on its claim that the defendant should have made a more narrowly tailored discovery request, as M Co. failed to comply with the mandate in the rules of practice that it engage in a good faith effort to reach agreement with the defendant on any discovery related objections and instead chose to seek a protective order completely barring discovery of many documents that plainly were subject to disclosure.

2. The defendant satisfied his burden of proving that he was harmed by the trial court's granting of M Co.'s motion for a protective order, as the defendant demonstrated that, without the requested discovery, he was unable to ascertain the precise basis for the alleged default until after the trial commenced:

The trial court's granting of M Co.'s motion for a protective order effectively prevented the defendant from discovering evidence that may have demonstrated that he had been overcharged by the lender, either through improper charges for insurance premiums or on the basis of a failure to reduce the interest rate pursuant to the SCRA, and the trial court's erroneous ruling precluded the defendant from learning of the basis of the alleged default and from challenging the accuracy of R's testimony or the information contained in the documents from the mortgage file that M Co. produced at trial.

347 Conn. 476 AUGUST, 2023 479

JPMorgan Chase Bank, National Assn. *v.* Lakner

Moreover, although the trial court faulted the defendant for failing to raise his claim under the SCRA as a defense prior to trial, that act does not constitute a distinct defense to a foreclosure action and was instead relevant to support the defendant's claim that M Co.'s debt calculations were incorrect and that he was not in default.

Furthermore, the trial court, in faulting the defendant for not raising his claim under the SCRA in a timely manner, overlooked the fact that the delay was not the defendant's fault but was a direct result of the issuance of the protective order, which prevented the defendant from accessing the very documents that would have informed him earlier that W Co. may not have lowered his interest rate in accordance with the SCRA.

In addition, there was no merit to M Co.'s claims that the trial court's error was harmless insofar as it was the defendant's burden to prove his special defense of payment and that nothing in the protective order prevented the defendant from proving his special defense with his own evidence, such as by submitting copies of cancelled checks, as M Co. could not avoid discovery on the ground that it does not bear the burden of proof, the defendant was not limited in his proof to only evidence already in his possession, the defendant likely could not produce copies of cancelled checks for each month of the alleged default because J Co. allegedly had periodically refused to accept the defendant's checks, and the mortgage file likely contained information beyond the defendant's payment history that was relevant to the defendant's claim that he was not in default, such as information related to the defendant's interest rate and insurance premiums.

Argued March 29—officially released August 8, 2023

*Procedural History*

Action to foreclose a mortgage on certain of the defendant's real property, and for other relief, brought to the Superior Court in the judicial district of New Haven, where MTGLQ Investors, L.P., was substituted as the plaintiff; thereafter, the court, *Hon. Anthony V. Avallone*, judge trial referee, granted the substitute plaintiff's motion for a protective order; subsequently, the case was tried to the court, *Baio, J.*; judgment of foreclosure by sale, from which the defendant appealed to the Appellate Court, *Alvord, Clark* and *Harper, Js.*, which affirmed the trial court's judgment and remanded the case for the purpose of setting a new sale date, and

JPMorgan Chase Bank, National Assn. *v.* Lakner

the defendant, on the granting of certification, appealed to this court. *Reversed*; *new trial*.

*Thomas P. Willcutts*, for the appellant (defendant).

*Jeffrey M. Knickerbocker*, for the appellee (substitute plaintiff).

*Opinion*

McDONALD, J. The sole issue in this foreclosure appeal is whether the trial court properly granted a motion for a protective order in favor of the plaintiff mortgagee, thereby resulting in the denial of all document discovery sought by the defendant mortgagor. The defendant, George S. Lakner, appeals from the judgment of the trial court in favor of the substitute plaintiff, MTGLQ Investors, L.P. On appeal, the defendant contends that the trial court improperly granted MTGLQ's motion for a protective order regarding the production of MTGLQ's mortgage file. We agree with the defendant.

In 1995, the defendant executed a promissory note in favor of Shawmut Mortgage Company in the original, principal amount of $100,000. The note was secured by a mortgage deed on the defendant's residential property located in New Haven. The interest rate on the defendant's loan was fixed at 7.25 percent for the thirty year term of the loan. Shawmut Mortgage Company subsequently merged into Fleet Mortgage Corp., which, in turn, merged into Washington Mutual Bank, F.A.

In 2007, Washington Mutual initiated a foreclosure action against the defendant, alleging that the note was in default by virtue of nonpayment of the installments of the principal and interest due on May 1, 2006, and each month thereafter. While the foreclosure action was pending, Washington Mutual's assets were sold to JPMorgan Chase Bank, National Association. In response to the foreclosure action, the defendant submitted an affidavit attesting that he made all the payments at issue,

JPMorgan Chase Bank, National Assn. *v.* Lakner

and, as proof, he attached copies of twelve months of checks, which were endorsed by Washington Mutual, that covered the period at issue. Thereafter, JPMorgan informed the defendant that it would not pursue Washington Mutual's foreclosure action, and the action was withdrawn in July, 2011.

In January, 2013, JPMorgan filed the present foreclosure action, alleging that the defendant's note was in default "by virtue of nonpayment of the monthly installments of principal and interest due on January 1, 2008, and each and every month thereafter . . . ." The defendant filed an answer and special defense in which he denied the allegation that he was in default, arguing that he "has submitted all payments due and owing on the subject mortgage note." In January, 2016, JPMorgan filed a motion for summary judgment. The defendant opposed the motion, in part, due to his denial that he had ever been in default of his payment obligations. In an affidavit in opposition to the motion for summary judgment, the defendant attested that, after the first foreclosure action was withdrawn, "[i]nitially, my payments were accepted by [JPMorgan] without incident, but, after approximately . . . [one] year, [JPMorgan] began to periodically refuse to accept my mortgage payments . . . . Throughout, I have attempted to rectify [JPMorgan's] refusal to accept my mortgage payments . . . but, each time I am able to correct the situation, [JPMorgan] ultimately reverts back to its refusal to accept my tendered payments . . . without providing me or [its employees at the branch bank] with any explanatory statements." The court denied JPMorgan's motion for summary judgment.

Because there was an extended period of inactivity following the denial of JPMorgan's motion for summary judgment, the trial court dismissed the case in December, 2017. JPMorgan then successfully moved to open

482 AUGUST, 2023 347 Conn. 476

JPMorgan Chase Bank, National Assn. *v.* Lakner

the case, and the current plaintiff, MTGLQ, was substituted for JPMorgan.[1]

On February 15, 2019, the defendant issued a notice of deposition on MTGLQ, with an accompanying document production request that sought production of MTGLQ's "complete mortgage file . . . relating to the [m]ortgage [n]ote and [d]eed that are the subject of this action . . . ." The notice also listed, among other things, the following specific documents to be produced: "All records of mortgage payments, including payments for property taxes and/or property insurance, related to the subject [m]ortgage [n]ote, from the inception of the [m]ortgage [n]ote to the present, including records pertaining to returning payments to the [d]efendant." MTGLQ filed a motion for a protective order requesting that the trial court disallow discovery as to all of the documents sought by the defendant on the ground that the requested documents were "not reasonably calculated to lead to the discovery of admissible evidence." MTGLQ also argued that the defendant was "on a fishing expedition, indulging a hope that, by ransacking [MTGLQ's] files, [he] will find something useful." Specifically, with respect to the request that MTGLQ furnish all records of mortgage payments, including property taxes and insurance payments, related to MTGLQ's claimed debt, MTGLQ argued, in total, that the document request was "simply too vague and broad to be answered. As such, the court should grant this motion and overrule any objection."

The defendant objected to MTGLQ's motion for a protective order, arguing that two issues were in dispute between the parties: (1) the allegation that the defendant was in default of his mortgage payment obligations,

---

[1] It appears that, after MTGLQ was substituted for JPMorgan as the plaintiff, the case caption was erroneously changed to "*MTGLQ Investors*, *L.P.* v. *George S. Lakner*."

JPMorgan Chase Bank, National Assn. *v.* Lakner

and (2) MTGLQ's standing to prosecute the foreclosure action. The defendant argued that the documents he sought in his deposition notice pertaining to the history of his mortgage account were relevant to the parties' dispute over whether the account was in default. He also argued that the documents pertaining to the history of the transfers of the mortgage note were relevant to the defendant's challenge to MTGLQ's standing.

With no ruling on MTGLQ's motion for a protective order, on June 4, 2019, the defendant filed a request for adjudication of the deposition dispute. On June 28, 2019, the defendant issued a new deposition notice, without an accompanying document production request, because the trial court had not yet ruled on MTGLQ's motion for a protective order. MTGLQ then filed a motion for a protective order as to the second deposition notice. In that motion, MTGLQ argued that the defendant "has forfeited the right to dispute the debt. The debt and default in this case [are] established through the affidavit of debt." MTGLQ argued that it was entitled to prove the default by means of an affidavit of debt only, pursuant to the provisions of Practice Book § 23-18 (a), "where no defense as to the amount of the mortgage debt is interposed . . . ."

On July 10, 2019, the trial court, *Hon. Anthony V. Avallone*, judge trial referee, granted MTGLQ's first motion for a protective order. In an articulation of its reasons for granting this motion, filed after the defendant appealed and the Appellate Court ordered such an articulation, the trial court stated that, with respect to the defendant's denial that he was ever in default, the defendant's discovery requests "do not come within the scope of [Practice Book] § 13-2. The defendant's specific request for all correspondence to and from the defendant does not meet the standard, in that [the correspondence is] already in the defendant's posses-

JPMorgan Chase Bank, National Assn. *v.* Lakner

sion.''[2] The trial court also stated, without elaboration, that the defendant's request is ''overly broad and will not lead to the admission of material evidence. It would be unreasonable to require [MTGLQ] to go to the substantial expense of providing this overly broad discovery. . . . The court granted the motion for a protective order to prevent . . . the improper use of the discovery.'' Thereafter, the trial court, *Cordani, J.*, denied MTGLQ's second motion for a protective order, and the defendant subsequently deposed a representative of MTGLQ's loan servicer, Dave Rittenhouse, a ''foreclosure litigation specialist,'' one week before trial. No documents were produced at that deposition.

Relevant to this appeal, at trial, before the court, *Baio, J.*, MTGLQ offered an affidavit of debt into evidence to prove its debt. The defendant's counsel objected, and the trial court sustained counsel's objection, explaining: ''[T]he request to offer the affidavit pursuant to Practice Book § 23-18 is denied in light of the fact that it does require that, in an action to foreclose a mortgage . . . there must be no defense as to the amount of the mortgage debt that is interposed, and . . . [a] review of the materials available to the court and the information thus far . . . indicate[s] that there is a dispute.'' But

---

[2] The parties participated in foreclosure mediation in 2013 and 2014. See General Statutes § 49-31m. The final report issued by the mediator provided, among other things, that, ''[a]t the initial mediation session on [April 18, 2013], [JPMorgan] provided a payment history from June, 1995, through the mediation date.'' The parties' participation in mediation was not extensively discussed at trial, and, accordingly, there is no record regarding the document containing the defendant's payment history that was purportedly provided to the defendant during mediation. The trial court's statement, in its articulation, that the ''correspondence to and from the defendant . . . [is] already in the defendant's possession'' appears to relate only to the correspondence between the parties and not this payment history. Even if the defendant had been provided such a payment history, under the circumstances of this case, the defendant was entitled to review the documentation in MTGLQ's mortgage file to discover any discrepancies or other problems contained therein.

JPMorgan Chase Bank, National Assn. *v.* Lakner

see *JPMorgan Chase Bank, National Assn.* v. *Malick*, 347 Conn. 155, 163,      A.3d      (2023) (affidavit of debt is used to establish amount of debt averred in affidavit when amount of debt is not in dispute). Thereafter, during the testimony of MTGLQ's witness, Rittenhouse, MTGLQ introduced into evidence exhibit 12, a twenty-eight page document consisting of the "Transaction Detail," "Payments Due Detail," and "Loan History Summary" of the defendant's account in order to prove its debt. The defendant's counsel objected, arguing that exhibit 12 was never produced in discovery. As a result, the defendant's counsel argued that the defendant was prejudiced because, "I don't have the opportunity to go through this. I don't have the opportunity to find specific documents to contradict this, and I have to take the position with [the] court, Your Honor, that we're severely prejudiced by this and it—and the idea that you can conceal a payment history because you don't expect to have to use it . . . ." The trial court admitted the exhibit, explaining that "[a]ny discovery issues that you may have had, at this point, the court's not going to go back and look and see what another judge did or why another judge did what [he or she] did." The court then took a brief recess to allow the defendant's counsel to review exhibit 12. The defendant's counsel subsequently requested access to MTGLQ's mortgage file during trial because MTGLQ's counsel had brought "two large boxes" of documents to court for the trial. The trial court declined to order that the defendant's counsel be given access to the documents.

Throughout trial, the defendant's counsel questioned Rittenhouse in an attempt to gain an understanding of the basis for the alleged default. Specifically, during his cross-examination, Rittenhouse explained that he reviewed the defendant's payment history going back to 2002 because that is when the defendant's delinquency "started to occur." He also testified that the delinquency

JPMorgan Chase Bank, National Assn. *v.* Lakner

began to build over time: "I recall seeing that [the short-fall in the payments submitted by the defendant began well before 2008], and, eventually, the [defendant] fell [one] month behind, and then, I think, it got to two months, and then it kind of snowballed." Rittenhouse also testified that the defendant's interest rate was 7.25 percent and that "[i]t [did] not appear that it change[d] through the life of the loan." The defendant, who is a retired colonel in the United States Army, testified that the interest rate on his loan had changed. Washington Mutual was required by the federal Servicemembers Civil Relief Act (SCRA), 50 U.S.C. § 3937 (a),[3] to lower the defendant's interest rate to 6 percent after he was called to active duty military service following the attacks of September 11, 2001, and the defendant testified that Washington Mutual did, in fact, lower his interest rate in 2002. This 1.25 percent reduction in the interest rate on the loan had the effect of lowering the defendant's monthly mortgage payments, according to the defendant. The defendant's testimony in this regard was confirmed by a December 17, 2002 letter to the defendant from Washington Mutual.[4] During the cross-

---

[3] Prior to the enactment of the SCRA in 2003, the SCRA was called the Soldiers' and Sailors' Civil Relief Act of 1940. See 50 U.S.C. app. § 501 et seq. (2000 and Supp. II 2002). However, to be consistent with the parties' briefs, the trial court's decision, and trial testimony, we refer to the act by its current name.

[4] The December 17, 2002 Washington Mutual letter was not in evidence at trial. At oral argument before this court, however, MTGLQ's appellate counsel stated that this court could consider the letter, nonetheless. Because MTGLQ does not contend that consideration of the letter by this court would be improper, we have no occasion to determine whether it would have properly been admitted at trial, had MTGLQ's trial counsel objected. Cf. *In re David P.*, 154 Conn. App. 508, 516, 105 A.3d 960 (2014) ("[c]oncessions made during oral argument may be properly considered by the appellate courts in rendering their decision[s]"), cert. denied, 315 Conn. 922, 107 A.3d 959 (2015); see also, e.g., *Hirsch* v. *Braceland*, 144 Conn. 464, 469, 133 A.2d 898 (1957) (considering fact that did not appear in record but was mentioned in party's brief and "admitted to be so by the [opposing party] during the course of oral argument [before] this court").

347 Conn. 476 AUGUST, 2023 487

JPMorgan Chase Bank, National Assn. *v.* Lakner

examination of Rittenhouse, the defendant's counsel asked, "when you testified that there are deficiencies in the payment history of this mortgage loan going back to the early 2000s, do you know whether . . . these, what you identified as deficiencies, were, in fact, the result of overcharging the interest under the [SCRA]?"[5] Rittenhouse did not provide a clear answer to the question. The defendant's counsel also sought clarification regarding potentially improper insurance charges to the defendant's account. Specifically, the defendant testified that he had always maintained insurance on the property through the United Services Automobile Association, which provides insurance coverage to members of the military, veterans, and their families, and did not insure the property as part of his mortgage. The defendant's counsel asked Rittenhouse why there were line items in exhibit 12 reflecting "[i]nsurance [p]remium [d]isbursement" on the defendant's account. Rittenhouse testified that he had not reviewed MTGLQ's mortgage file to determine whether the defendant had been improperly charged for insurance premiums.

In January, 2020, the trial court issued a memorandum of decision and rendered judgment of foreclosure by sale in favor of MTGLQ. Specifically, the trial court concluded that the defendant "provided no evidence establishing a lack of standing; nor did he present any evidence contradicting [MTGLQ's] evidence. Rather, [MTGLQ] established by a fair preponderance of the evidence that it had the right to enforce the debt at issue in the present matter." The court also concluded that the defendant failed to prove his special defense of payment, explaining: "The defendant has presented evidence of various payments having been made on the

---

[5] The defendant had previously argued in opposition to MTGLQ's second motion for a protective order that a United States Senate investigation had uncovered that Washington Mutual had engaged in fraud, including overcharging borrowers.

JPMorgan Chase Bank, National Assn. *v.* Lakner

mortgage debt. . . . This evidence, consisting primarily of copies of checks, demonstrates some payments to the lender, but it does not demonstrate, by a fair preponderance of the evidence, a lack of default. . . . The defendant's offer also fails to provide any claim of payments after 2009. As submitted by [MTGLQ], the evidence . . . accounts for the defendant's payment record up to and including December, 2012, reflecting that the servicer accepted some payments, which advanced the due date of the mortgage to May, 2008. . . . Consequently, the evidence presented establishes by a fair preponderance of the evidence that the payments made by the defendant were insufficient to bring the loan current, hence resulting in the [loan's being] in default.'' (Citations omitted.)

The trial court acknowledged that, at trial, the defendant argued that the SCRA may provide a defense to the foreclosure action. The court explained, however, that "[t]he defendant had not raised the SCRA at any time before trial and claims that the issue arose for the first time at trial. . . . Even if the court were to consider the raised defense of the SCRA, the defendant has not proven by a fair preponderance of the evidence that the SCRA provides a defense in this matter. Although the evidence submitted does establish that, at some point, the defendant was provided with an adjusted interest rate, the defendant's evidence, consisting entirely of his own testimony, demonstrates that his recollection as to the dates of his military service differ[s] from military documentation. . . . Additionally, the defendant testified that he was fortunate not to suffer any personal hardships that would make it difficult for him to meet his mortgage obligations and, moreover, that his pay was not materially affected.'' (Citation omitted; footnote omitted.) The trial court emphasized that, "if the defendant intended to rely on the SCRA as a defense, then he should have raised it

JPMorgan Chase Bank, National Assn. *v.* Lakner

before trial. To consider it now would not only endorse the practice of unfair surprise but would also be prejudicial to the opposing counsel.''

The Appellate Court subsequently issued a memorandum decision affirming the judgment of the trial court and remanding the case for the purpose of setting a new sale date.[6] See *MTGLQ Investors, L.P.* v. *Lakner*, 210 Conn. App. 901, 266 A.3d 200 (2022). The defendant filed a petition for certification to appeal, which we granted, limited to the following issue: ''Did the Appellate Court properly uphold the trial court's decision to grant a motion for a protective order in favor of [MTGLQ], thereby resulting in the denial of document discovery sought by the defendant related to [MTGLQ's] mortgage file that was the subject of this foreclosure action?'' *MTGLQ Investors, L.P.* v. *Lakner*, 343 Conn. 913, 274 A.3d 113 (2022).

On appeal, the defendant contends that the trial court erred in granting MTGLQ's motion for a protective order. Specifically, the defendant contends that the trial court abused its discretion by granting the motion for a protective order, which resulted in a '' 'complete denial' '' of document discovery, in violation of Practice Book § 13-2. The defendant also argues that the protective order harmed him at trial because, without access to MTGLQ's mortgage file, he ''was unable to timely discover, develop and potentially present to the [trial] court definitive evidence that [he] was the victim of being overcharged on his mortgage account, which would both undermine the judgment figure awarded to [MTGLQ] by the court, as well as undermine [MTGLQ's] allegation that the defendant was ever in default of his mortgage payment obligations . . . .'' The defendant

---

[6] Because the Appellate Court summarily affirmed the trial court's judgment, we do not have the benefit of the Appellate Court's analysis as to why it concluded that the defendant's appeal was meritless.

JPMorgan Chase Bank, National Assn. *v.* Lakner

argues that, because the protective order precluded his requested discovery, he did not learn until Rittenhouse's trial testimony that he had been improperly charged insurance premiums and assessed a higher interest rate in violation of the SCRA.

In response, MTGLQ contends that the trial court did not abuse its discretion in granting the motion for a protective order because the defendant's request for production of documents was overly broad, in that it did not specify the documents sought, it was not limited in time, it was not limited to documents to be used at trial, and it did not seek to clarify any entry in the payment history that the defendant purportedly received several years prior, during mediation.[7] MTGLQ also argues that, even if the trial court abused its discretion, the error was harmless because "that order did not impair or [a]ffect [the defendant's] ability to provide his own evidence in support [of] his payment defense." Under the specific circumstances of this case, we agree with the defendant and, accordingly, reverse the judgment of the Appellate Court.

We begin with the standard of review and relevant legal principles. It is well established that "[t]he rules

---

[7] In its brief, MTGLQ also contends that "[t]he trial court's decision to grant [the] motion for a protective order in favor of [MTGLQ] did not result in the denial of document discovery sought by the defendant related to [MTGLQ's] mortgage file because the defendant never propounded a request for documents [on MTGLQ] . . . but, instead, chose only to depose [MTGLQ] after the court had scheduled trial." To the extent MTGLQ argues that the defendant was not permitted to request document discovery in a deposition notice, it is mistaken. See, e.g., Practice Book § 13-27 (g) ("[t]he notice to a party deponent may be accompanied by a request made in compliance with Sections 13-9 through 13-11 for the production of documents and tangible things at the taking of the deposition"); Practice Book § 13-28 (c) ("[a] subpoena issued for the taking of a deposition may command the person to whom it is directed to produce and permit inspection and copying of designated books, papers, documents or tangible things which constitute or contain matters within the scope of the examination permitted by Sections 13-2 through 13-5").

347 Conn. 476 AUGUST, 2023 491

JPMorgan Chase Bank, National Assn. *v.* Lakner

of discovery are designed to make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'' (Internal quotation marks omitted.) *Wexler* v. *DeMaio*, 280 Conn. 168, 186 n.13, 905 A.2d 1196 (2006). The boundaries of discovery are broader than the boundaries of admissible evidence; see *Sanderson* v. *Steve Snyder Enterprises, Inc.*, 196 Conn. 134, 139, 491 A.2d 389 (1985); and, as a result, ''[d]iscovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action and if it can be provided by the disclosing party or person with substantially greater facility than it could otherwise be obtained by the party seeking disclosure.'' Practice Book § 13-2.

''[T]he [trial] court's inherent authority to issue protective orders is embodied in Practice Book § 13-5 . . . .'' *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 221 n.59, 884 A.2d 981 (2005). ''We have long recognized that the granting or denial of a discovery request rests in the sound discretion of the [trial] court, and is subject to reversal only if such an order constitutes an abuse of that discretion. . . . [I]t is only in rare instances that the trial court's decision will be disturbed. . . . Therefore, we must discern whether the court could [have] reasonably conclude[d] as it did.'' (Internal quotation marks omitted.) *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 7, 826 A.2d 1088 (2003). ''That discretion is limited, however, by the provisions of the rules pertaining to discovery . . . especially the mandatory provision that discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action. . . . The court's discretion applies to decisions concerning whether the information is material, privileged, substantially more available to the disclosing party, or within the disclosing party's knowledge, possession or power

. . . . A complete denial of discovery, however, is seldom within the court's discretion unless the court finds that one or more of the limitations on discovery . . . appl[y]. . . . When discovery is warranted under the [previously discussed principles], such a denial is an abuse of discretion." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 57–60, 459 A.2d 503 (1983).

Foreclosure cases are governed by the same rules of discovery that apply in other civil cases. In this context, we are mindful that "[a]n action for foreclosure is peculiarly an equitable action"; (internal quotation marks omitted) *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 670, 212 A.3d 226 (2019); and that "[a] party that invokes a court's equitable jurisdiction by filing an action for foreclosure necessarily invites the court to undertake . . . an inquiry [into his conduct]. . . . Equity will not afford its aid to one who by his conduct or neglect has put the other party in a situation in which it would be inequitable to place him. . . . A trial court conducting an equitable proceeding may therefore consider all relevant circumstances to ensure that complete justice is done." (Citations omitted; internal quotation marks omitted.) Id., 671.

As discussed, in his first deposition notice, the defendant requested the production of MTGLQ's "complete mortgage file," including but not limited to: "All records of mortgage payments, including payments for property taxes and/or property insurance, related to the subject [m]ortgage [n]ote, from the inception of the [m]ortgage [n]ote to the present, including records pertaining to returning payments to the [d]efendant." The basis of MTGLQ's motion for a protective order, and the trial court's ruling on that motion, was that the request for MTGLQ's mortgage file would not lead to the discovery of admissible evidence and was overly broad.

JPMorgan Chase Bank, National Assn. *v.* Lakner

Without citing to any evidence or factual predicate, the trial court summarily and without explanation concluded that the defendant's request for documents contained in MTGLQ's mortgage file pertaining to the defendant's loan would not lead to the discovery of admissible evidence. That conclusion was unsupported by any reference to the facts of the present case and runs counter to the general observation that a lender's mortgage file contains critical information regarding a mortgagor's account. See, e.g., 1 D. Caron & G. Milne, Connecticut Foreclosures (12th Ed. 2022) § 1-1:1, p. 4 ("A close examination of the lender's file is critical to a successful prosecution of the [foreclosure] action. A hurried review is apt to cause counsel to overlook some of the problems that abound in this area of the law, an oversight that can only result in delay and possible embarrassment for the attorney to whom the file has been entrusted."). This is true for the plaintiff and the defendant alike. Although many foreclosure cases will proceed without the need for discovery, it should come as no surprise, in a contested case, that a defendant or his or her attorney will need to review those aspects of the lender's file that may lead to the discovery of admissible evidence relating to one or more disputed issues. This is particularly so when, as here, the defendant raises a special defense of payment. See, e.g., *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 606 n.10, 717 A.2d 713 (1998) ("[p]ayment is an affirmative defense that must be proved by the defendant").

The point is well illustrated by the facts of this case. Some of the very documents that the defendant was blocked from obtaining in discovery—those pertaining to the defendant's payment history—were ultimately entered into evidence by MTGLQ at trial without the defendant ever having seen them. For example, to prove its debt, MTGLQ introduced into evidence exhibit 12,

a twenty-eight page document that combined "Transaction Detail," "Payments Due Detail," and "Loan History Summary" of the defendant's account. MTGLQ also introduced into evidence exhibit 14, a December, 2012 document from JPMorgan detailing "all transactions on [the defendant's] account for the period of February 7, 2006, through December 5, 2012." These documents were plainly within the scope of the defendant's request. Yet, the defendant was not allowed to see them before trial. More broadly, MTGLQ's witness, Rittenhouse, was permitted to testify based on his review of MTGLQ's mortgage file, whereas the defendant and his counsel were denied access to that same material. It can hardly be argued that access to MTGLQ's mortgage file would not lead to the discovery of admissible evidence when MTGLQ actually introduced documents from the mortgage file into evidence and its witness testified at trial based on his extensive review of that file.

We also disagree with the trial court's conclusion that the defendant's request was overly broad.[8] As illustrated by the records submitted into evidence by MTGLQ at trial, MTGLQ's mortgage file contained, among other things, the account's payment history, correspondence between the lender and borrower, and other important account information. These records make up the source material that gives rise to MTGLQ's foreclosure action. The defendant was not required to

_____

[8] In its motion for a protective order, MTGLQ also argued that requests 1G, 1H, and 2 were too vague. Request 1G sought "[a] complete printout of [MTGLQ's] computer file records related to the subject [m]ortgage [n]ote . . . ." Request 1H asked for "[a]ll records of mortgage payments, including payments for property taxes and/or property insurance, related to the subject [m]ortgage [n]ote, from the inception of the [m]ortgage [n]ote to the present, including records pertaining to returning payments to the [d]efendant." Request 2 sought "[a]ll records relied [on] in connection with [MTGLQ's] responses to the defendant's [r]equests to [a]dmit . . . ." MTGLQ conceded at oral argument that it did not explain to the trial court why or how these requests were too vague to allow MTGLQ to comply.

JPMorgan Chase Bank, National Assn. *v.* Lakner

rely solely on MTGLQ's summary of his payment history; he was entitled to review the underlying records themselves to confirm that the information contained in the summary was accurate. See, e.g., *Customers Bank* v. *Tomonto Industries*, *LLC*, 156 Conn. App. 441, 445–46, 112 A.3d 853 (2015) (originals or copies of documents used to develop summary exhibits admitted pursuant to § 10-5 of Connecticut Code of Evidence must be made available to other parties upon request); see also, e.g., *Brookfield* v. *Candlewood Shores Estates*, *Inc.*, 201 Conn. 1, 12–13, 513 A.2d 1218 (1986) (summaries may be admitted provided that documents on which they are based are available to opposing party). Under these circumstances, we cannot agree with the trial court that a request seeking production of a lender's mortgage file is overly broad.

The trial court's order granting MTGLQ's motion for a protective order effectively denied the defendant meaningful access to any document discovery. "A complete denial of discovery . . . is seldom within the [trial] court's discretion . . . ." *Standard Tallow Corp.* v. *Jowdy*, supra, 190 Conn. 60. Under these circumstances, we conclude that the trial court abused its discretion in granting MTGLQ's motion for a protective order, denying the defendant access to MTGLQ's mortgage file related to the defendant's loan.

MTGLQ nevertheless argues that the defendant should have made a more narrowly tailored discovery request. We are not persuaded. To the extent that MTGLQ believed that the defendant's request was overly broad, our rules of practice mandate that it engage in a good faith effort to reach agreement with the defendant on any discovery related objections. See Practice Book § 13-10 (i). It does not appear from the record that MTGLQ had engaged in this good faith effort or that such an effort was fruitless as a result of the defendant's intransigence or unreasonableness; rather, MTGLQ

JPMorgan Chase Bank, National Assn. *v.* Lakner

chose instead to seek a protective order completely barring discovery of many documents that plainly were subject to disclosure.[9]

Having concluded that the trial court abused its discretion in granting MTGLQ's motion for a protective order, we must address whether the defendant has shown that he was harmed by that error. "The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.) *Kalams* v. *Giacchetto*, 268 Conn. 244, 249, 842 A.2d 1100 (2004). In considering the question of harm, we reiterate that the defendant's issue on appeal is not whether the trial court erred in rendering judgment based on the record before it. Instead, the defendant's claim of error is that the protective order substantially prevented him from having the opportunity to pursue, develop and support the defenses he raised. Indeed, the defendant argues that, without the requested discovery, he was unable to ascertain the precise basis for the alleged default until after trial had commenced. Under the particular circumstances of this case, we conclude that the defendant has satisfied his

[9] MTGLQ also argues, for the first time on appeal, that, as a result of waiting until a little more than one month before the scheduled trial date to conduct discovery, the defendant waived his right to discovery. This argument misconstrues the relevant discovery timeline. The defendant issued a notice of deposition to MTGLQ on February 15, 2019, and trial ultimately commenced, nearly seven months later, on September 13, 2019. MTGLQ's motion for a protective order was not based on the timing of the request, and, consequently, the trial court's decision to grant the motion for a protective order was not based on the timing of the request. Because this argument was not raised before the trial court, we decline to consider it further. See, e.g., *Jobe* v. *Commissioner of Correction*, 334 Conn. 636, 643, 224 A.3d 147 (2020) ("[i]t is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial, and [o]nly in [the] most exceptional circumstances can and will [an appellate] court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court" (internal quotation marks omitted)).

JPMorgan Chase Bank, National Assn. *v.* Lakner

burden of establishing that he was harmed by the granting of the motion for a protective order.

When the trial court granted MTGLQ's motion for a protective order, it effectively prevented the defendant from discovering evidence that may have demonstrated that he had been overcharged on his mortgage account—either through improper charges for insurance premiums or a failure to reduce the interest rate pursuant to the SCRA—or from even knowing the basis of the alleged default. The court's order granting MTGLQ's motion precluded the defendant from obtaining any document discovery related to his payment history, including any returned payments, and information pertaining to other charges to his account. Consequently, it was not until trial that the defendant discovered that a possible basis for his alleged default was the failure of Washington Mutual to lower his interest rate pursuant to the SCRA or one of the lender's improperly charging his account for insurance premiums. As a further result of the erroneous protective order, MTGLQ was allowed to selectively choose, at its sole discretion, which documents from its mortgage file it would produce at trial. Rittenhouse was also permitted to testify regarding his review of the mortgage file, the defendant's counsel was unable to challenge the veracity of this testimony because he did not have an opportunity to review this file, and the trial court made clear it was not going to revisit discovery rulings. Cf. Conn. Code Evid. § 6-9 (b) ("If a witness, before testifying, uses an object or writing to refresh the witness' memory for the purpose of testifying, the object or writing need not be produced for inspection unless the court, in its discretion, so orders. Any party may introduce the object or writing in evidence if it is otherwise admissible under the Code."). Recently, in a related context, this court explained the importance of discovery in a foreclosure action in which aspects of a historical record of debt were compiled

JPMorgan Chase Bank, National Assn. *v.* Lakner

by a third party, but, at trial, the plaintiff introduced its own record of the debt that incorporated information that the third party had provided to the plaintiff. See *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, 334 Conn. 374, 377–78, 389, 222 A.3d 950 (2020). Specifically, we held that such a document is admissible under the business records exception to the hearsay rule; see id., 388, 394; because, among other things, "[a] defendant is free to undertake discovery concerning the accuracy of the information in a business record as well as to introduce or cross-examine witnesses about its accuracy." Id., 393. In the present case, the defendant had no meaningful access to those very documents that would have allowed him to challenge the accuracy of Rittenhouse's testimony or the information contained in exhibit 12, which MTGLQ used to prove the amount of the debt.

In its memorandum of decision, the trial court nevertheless faulted the defendant for not raising the SCRA as a defense prior to trial. To begin with, we note that the SCRA does not, in and of itself, constitute a distinct defense to the foreclosure action. Rather, the SCRA was relevant to support the defendant's argument that MTGLQ's debt calculations were incorrect and that he was not in default. In faulting the defendant for raising the SCRA issue too late, the trial court also overlooked the fact that the delay was not the defendant's fault but, instead, was a direct result of the issuance of the protective order, which blocked the defendant's access to the very documents that would have informed him earlier that Washington Mutual may not have lowered his interest rate in accordance with the SCRA as it indicated it had in its December 17, 2002 letter. In its memorandum of decision, the trial court also noted that the "Practice Book mandates full and broad discovery prior to trial. [T]he purpose of the rules of discovery is to make a trial less a game of blindman's buff and

347 Conn. 476 AUGUST, 2023 499

JPMorgan Chase Bank, National Assn. *v.* Lakner

more a fair contest with the basic issues and facts disclosed to the fullest.'' (Internal quotation marks omitted.) Ironically, it was the defendant who was subjected to a game of blindman's buff throughout trial as he attempted to ascertain the basis for his alleged default.[10] Under the circumstances of this case, and given the broad scope of our discovery rules, as well as the equitable nature of a foreclosure proceeding; see, e.g., *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 670–71; we conclude that the defendant has satisfied his burden of establishing that he was harmed by the issuance of the protective order.

MTGLQ argues that, even if the trial court abused its discretion in granting the motion for a protective order, that error was harmless because it was the defendant's burden to prove his special defense of payment, and nothing in the protective order prevented the defendant from proving his special defense with his own evidence. MTGLQ provides no legal authority, and we are aware of none, for the proposition that a party can avoid discovery on the basis that it does not bear the burden of proof or that the party who bears a burden can be limited in his proof to only evidence already in his possession. This argument turns upside down the fundamental idea underlying civil discovery. Additionally, although MTGLQ argues that the defendant could rebut the allegation that he was in default by submitting copies of cancelled checks, the defendant maintained throughout the course of this action that, after the first

_____

[10] We recognize that the trial judge, *Baio, J.*, was not the same judge who ruled on MTGLQ's motion for a protective order. When the discovery issues arose during trial, Judge Baio declined to revisit "what another judge did or why another judge did what [he or she] did." Nevertheless, the denial of the defendant's discovery request prevented the defendant from participating in a trial that was "a fair contest with the basic issues and facts disclosed to the fullest practicable extent." (Internal quotation marks omitted.) *Wexler* v. *DeMaio*, supra, 280 Conn. 186 n.13. Judge Baio's decision not to revisit the discovery rulings cemented the harm to the defendant at trial.

foreclosure action was withdrawn, JPMorgan initially accepted his payments, but, after approximately one year, it began to "periodically refuse to accept [his] mortgage payments . . . ." As such, the defendant likely could not produce cancelled checks for each month of the alleged default. MTGLQ's mortgage file may well have contained information regarding these rejected payments. Without the ability to review the mortgage file, the defendant cannot be certain. Thus, access to MTGLQ's mortgage file was critical to the defendant's allegation that JPMorgan was improperly rejecting his payments. Cf. 2 D. Caron & G. Milne, supra, § 32-2:1, p. 636 ("[a] borrower who makes timely payments that are improperly rejected would appear to have a bona fide defense to the foreclosure").

Additionally, MTGLQ's mortgage file likely contains further information beyond payment history. For example, it may have contained information related to the defendant's interest rate and insurance premiums. Indeed, at trial, when MTGLQ introduced exhibit 12, the defendant's counsel discovered that there appeared to be improper insurance charges on the defendant's account. The defendant's counsel asked Rittenhouse why there were line items in exhibit 12 reflecting "[i]nsurance [p]remium [d]isbursement" on the defendant's account. Rittenhouse was unable to answer the question because he had not reviewed MTGLQ's mortgage file to determine whether the defendant had been improperly charged for insurance premiums. These line items are wholly inconsistent with the defendant's testimony that he had always maintained insurance on the property through the United Services Automobile Association and did not insure the property as part of his mortgage, and, so, the existence (or lack thereof) of underlying documentation in the mortgage file would be of critical importance to resolve the dispute. Had the defendant had access to the documents used by

MTGLQ to develop exhibit 12, as required by § 10-5 of the Connecticut Code of Evidence; see, e.g., *Customers Bank* v. *Tomonto Industries, LLC*, supra, 156 Conn. App. 445–46; he may have been able to present evidence establishing improper charges for insurance premiums. MTGLQ cannot avoid discovery simply by claiming it was the defendant's burden to prove payment.

## CONCLUSION

The Appellate Court improperly upheld the trial court's decision to grant the motion for a protective order in favor of MTGLQ, thereby resulting in the denial of document discovery sought by the defendant related to MTGLQ's mortgage file. The defendant also satisfied his burden of establishing that he was harmed by the granting of that motion.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court with direction to deny the motion for a protective order and for a new trial.

In this opinion the other justices concurred.